72 P.3d 473

STATE of Hawai'i, Plaintiff–Appellee,

v.

Wayman KAUA, Defendant–Appellee.

No. 25147.

Supreme Court of Hawai'i.

July 8, 2003.

2

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the briefs, for the defendant-appellant Wayman Kaua.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, AND ACOBA, JJ., and Intermediate Court of Appeals Judge LIM, Assigned by Reason of Vacancy.

Opinion of the court by LEVINSON, J.

The defendant-appellant Wayman Kaua appeals from the findings of fact (FOFs), conclusions of law (COLs), and order of the first circuit court, the Honorable Gail C. Nakatani presiding, filed on May 6, 2002, denying Kaua's motion for correction of illegal sentence. On appeal, Kaua's sole point of error is that the circuit court erred in denying his motion for correction of illegal sentence, based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

As we discuss more fully *infra* in Section III, we believe that Kaua's argument is without merit. Accordingly, we affirm the circuit court's FOFs, COLs, and order denying Kaua's motion for correction of illegal sentence, filed on May 6, 2002.

## I. BACKGROUND

The present matter arose out of an incident that occurred on October 29, 1999, involving a hostage stand-off between Kaua and several Honolulu Police Department (HPD) officers during the execution of a warrant for Kaua's arrest. On March 3, 1999, an O'ahu Grand Jury indicted Kaua, charging him with the following offenses: (1) attempted murder in the first degree, in violation of Hawai'i Revised Statutes (HRS) §§ 705–500 (1993) and 707–701(1)(a) (1993) (Count I); (2) attempted murder in the first degree, in violation of HRS §§ 705–500 and 707–701(1)(b) (1993) (Counts II–IV); (3) kidnapping, in violation of HRS § 707–720(1)(b) (1993) (Count V); (4) kidnapping, in violation of HRS § 707–720(1)(e) (1993) (Count VI); (5) kidnapping, in violation of HRS § 707–720(1)(f) (1993) (Count VII); (6) terroristic threatening in the first degree, in violation of HRS § 707–716(1)(d) (1993) (Count VIII);

(7) possession of any firearm or ammunition by a person convicted of certain crimes, in violation of HRS § 134–7(b) and (h) (Supp. 1999) (Count IX); (8) reckless endangering in the first degree, in violation of HRS § 707–713 (1993) (Counts X–XII); and (9) carrying or use of firearm in the commission of a separate felony, in violation of HRS § 134–6(a) and (e) (Supp.1999) (Count XIII).

Kaua's jury trial commenced on November 4, 1999 before the Honorable Wendell K. Huddy. On November 22, 1999, the jury acquitted Kaua of the offense of attempted murder in the first degree (Count I). The jury, however, returned the following guilty verdicts as to: (1) the lesser included offense of attempted assault in the first degree (Count II); (2) the lesser included offense of reckless endangering in the first degree (Count III); (3) the lesser included offense of attempted manslaughter based upon extreme mental or emotional disturbance (EMED) (Count IV); (4) kidnapping (Count V); (5) the lesser included offense of unlawful imprisonment in the second degree (Count VI); (6) kidnapping (Count VII); (7) terroristic threatening in the first degree (Count VIII);

(8) possession of any firearm or ammunition by a person convicted of certain crimes (Count IX); (9) reckless endangering in the first degree (Counts X–XII); and (10) carrying or use of a firearm in the commission of a separate felony (Count XIII).

With respect to Counts V–VII, the jury found that Kaua voluntarily released the hostage taken during the subject incident in a safe place prior to trial, thereby reducing the offense of kidnapping from a class A felony to a class B felony, pursuant to HRS § 707–720(3) (1993). With respect to Counts V–VIII and X–XII, the jury found that Kaua possessed and used or threatened to use a semiautomatic firearm during the commission of the offense of kidnapping. Finally, the circuit court merged Counts V and VII (kidnapping) and Count VI (unlawful imprisonment in the second degree) with Count XIII (carrying or use of a firearm in the commission of a separate felony).

On January 12, 2000, the prosecution filed a motion for extended terms of imprisonment, pursuant to HRS § 706–662(4)(a) (Supp.1999),[1] on the basis that Kaua was a

1. HRS § 706–662 provides in relevant part:

**Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
 . . . .
(3) The defendant is a dangerous person whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others. . . .
(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.
(5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, whose imprisonment for an extended term is necessary for the protection of the public. . . .

We need not, and do not, address whether the assessment of a defendant's status as a "professional criminal," interposed by HRS § 706–662(2) (Supp.1999) as a prerequisite to the imposition of an extended term of imprisonment, falls within the purview of the United States Supreme Court's decision in *Apprendi*.

We do note, however, that, in 2001, the legislature amended HRS § 706–662 by adding subsection (6), which provides in relevant part:

(6) The defendant is a hate crime offender whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:

(a) The defendant is convicted of a crime under chapter 707, 708, or 711; and
(b) The defendant intentionally selected a victim, or in the case of a property crime, the property

"multiple offender" and that his criminality was so extensive that extended terms of imprisonment were necessary for the protection of the public.[2] On February 1, 2000, the circuit court conducted a hearing on the prosecution's motion for extended terms of imprisonment, at which Kaua stipulated to, and the circuit court took judicial notice of, (1) his prior conviction in Cr. No. 90–1996[3] and (2) the offenses in Counts II–XIII of which he was convicted in the present matter. At the hearing, the prosecuting attorney (PA) argued that Kaua's extensive criminal history, which extended from his childhood to adulthood, violent characteristics, life-threatening use of firearms, and history of substance abuse warranted extended terms of imprisonment with respect to Counts II–IV and VIII–XIII. Moreover, the PA emphasized that, to date, probation, parole, and rehabilitative treatment facilities had proven unsuccessful in deterring Kaua's criminal behavior and, therefore, urged the circuit court, within its discretion, to sentence Kaua to a term of life imprisonment with the possibility of parole. Defense counsel responded that no victim of Kaua's past crimes had sustained any physical injury from his criminal acts and that, although "his history and circumstances are not consistent with being a law-abiding citizen," Kaua's criminal record did not reflect "the multiplicity and the length" typical of convicted felons who had been sentenced to extended terms of imprisonment. Consequently, defense counsel requested that the circuit court sentence Kaua to a twenty-year indeterminate maximum term of imprisonment, subject to a fifteen-year mandatory minimum term. The PA retorted that the evidence adduced at Kaua's jury trial—namely, the fact that he took a woman hostage and fired several gunshots at HPD officers in an effort to avert the officers' attempt to execute a warrant for his arrest—substantially belied defense counsel's suggestion that "[Kaua] did not ever hurt anyone." Finally, the PA posited that imposing a twenty-year term of imprisonment in the present matter would, in effect, be sentencing Kaua as a "first-time offender."

[PA]: If a person walked into a convenience store, pointed a semiautomatic gun at that person and said[,]["]I want your money,["] and walks out of there, that person would get a 20–year term, 15 years without possibility of parole, not somebody who has distinguished themselves with three felony convictions, including two hostage-takings, [which is] probably a first in the state of Hawai'i.

In light of the foregoing arguments, the circuit court granted the prosecution's motion for extended terms of imprisonment, remarking as follows:

On the Motion for Sentencing to Extended Terms of Imprisonment, as far as the first prong is concerned, that is, whether or not [Kaua] qualifies, again, [Kaua] has conceded. He is a multiple offender, and he was represented by legal counsel. All of those facts have been proven by the prosecution beyond a reasonable doubt.

On the discretionary matters, first, on the motion for Extended Term of Imprisonment, discretionary is [whether] such

---

that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, or sexual orientation of any person. *See* 2001 Haw. Sess. L. Act 240, § 3 at 631. We discuss the applicability of *Apprendi* to HRS §§ 706–662(1) and (3) through (6) *infra* in section III.

2. In addition to the motion for extended terms of imprisonment, the prosecution filed a motion for mandatory minimum terms of imprisonment, pursuant to HRS § 706–660.1 (1993), *see infra* note 7, a motion for sentencing as a repeat offender, pursuant to HRS § 706–606.5 (1993), and a motion for consecutive term sentencing, pursuant to HRS §§ 706–668.5 (1993) and 706–

606 (1993). On February 17, 2000, the circuit court granted in part and denied in part the prosecution's motion for consecutive term sentencing. That same day, the circuit court also granted the prosecution's motions for mandatory minimum terms of imprisonment and sentencing as a repeat offender.

3. On March 30, 1993, the circuit court sentenced Kaua in Cr. No. 90–1996 to a ten-year term of imprisonment for the offenses of possession of a firearm by a person convicted of certain crimes, in violation of HRS § 134–7(b) (1993), and possession of ammunition by a person convicted of certain crimes, in violation of HRS §§ 134–7(b) and (g) (1993).

term [is] necessary for the protection of the public.

. . . .

Defendant's history suggests the following; from an early age, alcoholism, substance abuse. And the substance abuse is of great concern, because as a youth, it went from marijuana to cocaine, opiates, and then crystal methamphetamine. The use sometimes was sporadic. But when [Kaua] abused the drugs, it was very severe. And undoubtedly, in the days or weeks surrounding these offenses and perhaps shortly before these offenses, [Kaua] was abusing drugs in the court's judgment.

Now, his history also suggests assaultive behavior, threatening behavior. We have abuse of household member, terroristic threatening, other incidents which have been reported or mentioned by the prosecution. Basically, it's the court's conclusion that while under the influence or while under extreme stress, [Kaua] is unable to control his behavior. And that impairment has brought about assaultive behavior as well as threatening behavior.

Of more concern is . . . his access to firearms. Before these incidents, [Kaua] did have a firearm conviction. And reportedly on other occasions, he resorted to use of firearms, although in one incident, I understand that it's been disputed. And, of course, in the incidents before the court, [Kaua] used an assault rifle.

. . . .

Now, as I recited this history, I can only reach a conclusion that in balancing all of these factors and in rendering this sentence, I'm considering the interest of the community, and I'm also considering the interest of the individual. For [Kaua], I do want to give him some hope. For his family, I want to give them some hope. For the community, I also want to give some protection, because basically it does come down to the individual.

And I don't agree with the defense that it was only [Kaua] who was hurt in this incident.[4] He used a rifle at a long range, and I do not believe that [Kaua]

was experienced with use of that assault rifle. Shooting at a long range with people in the vicinity, without any kind of experience—and certainly he didn't show any kind of experience; otherwise, he would have hit that police officer who was hiding behind his vehicle—other people could have been hurt by wild shots. And these were shots in the direction of a police officer, and I . . . think that [Kaua] knew that it was a police officer who was there. Certainly[,] he had the assistance of his spouse in identifying who these people were outside and [in] what capacity they were out there. It's not only the police officer who could have been shot, but it could have been other people. And I understand that there were children in the vicinity. He may not have intended to hit any children. But in the manner that the rifle was being fired, there's also a strong . . . possibility that minors could have been hurt as well as other innocent bystanders.

Basically, [Kaua], I believe when I look at the factors and consider his character, his history, his attitude, and the need for a structured environment, I believe that it's necessary for the protection of the public to impose the extended terms. . . .

The circuit court subsequently sentenced Kaua as follows: (1) for the lesser included offense of attempted assault in the first degree (Count II), an extended indeterminate maximum twenty-year prison term, subject to mandatory minimum terms of three years and four months as a repeat offender and ten years for the use of a semiautomatic firearm; (2) for the offense of reckless endangering in the first degree (Counts III, X, XI, and XII), extended indeterminate maximum ten-year prison terms as to each of Counts III, X, XI, and XII, subject to mandatory minimum terms of one year and eight months as a repeat offender and five years for the use of a semiautomatic firearm; (3) for the lesser included offense of attempted manslaughter based upon EMED (Count IV), an extended indeterminate maximum term of life imprisonment with the possibility of parole, subject to mandatory minimum terms of six years

---

4. During the course of the hostage stand-off with HPD officers in the present matter, Kaua sus-

tained a bullet wound to his head, leaving him blind in his right eye and deaf in his left ear.

and eights months as a repeat offender and fifteen years for the use of a semiautomatic firearm; (4) for the offense of terroristic threatening in the first degree (Count VIII), an extended indeterminate maximum ten-year prison term, subject to mandatory minimum terms of one year and eight months as a repeat offender and five years for the use of a semiautomatic firearm; (5) for the offense of possession of any firearm or ammunition by a person convicted of certain crimes (Count IX), an extended indeterminate maximum twenty-year prison term, subject to a mandatory minimum term of three years and four months as a repeat offender; and (6) for the offense of carrying or use of a firearm in the commission of a separate offense (Count XIII), an extended indeterminate maximum term of life imprisonment with the possibility of parole, subject to a mandatory minimum term of six years and eight months as a repeat offender. The circuit court further ruled that the six terms were to run concurrently with each other but consecutively to the sentence in Cr. No. 90–1996.

On February 28, 2000, Kaua filed a timely notice of appeal.[5] On May 1, 2001, this court issued a summary disposition order, affirming the circuit court's judgment of conviction and sentence.

On March 13, 2002, Kaua filed a motion for correction of illegal sentence [hereinafter, "Rule 35 motion"], pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35 (2001).[6] On March 20, 2002, the circuit court conducted a hearing on Kaua's Rule 35 motion, during which Kaua argued, *inter alia*, that, pursuant to the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the two-step process for determining a criminal defendant's status as a "multiple offender," requisite to the imposition of an extended term of imprisonment pursuant to HRS § 706–662(4)(a), *see supra* note 1, is to be determined by the jury in a separate sentencing hearing. Kaua posited that the bright-line rule adopted by the *Apprendi* Court—*i.e.*, that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt—essentially superceded this court's "intrinsic-extrinsic" analysis, first articulated in *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994), and reaffirmed in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890 (1999), for purposes of determining whether the imposition of an extended term sentence was an issue for the sentencing court or the jury. The deputy prosecuting attorney (DPA) countered that, in *Tafoya*, this court expressly stated that the two-step process for imposing an extended term of imprisonment under HRS § 706–662(4) was to be determined by the sentencing court and not the jury.

On May 6, 2002, the circuit court issued its FOFs, COLs, and order denying Kaua's Rule 35 motion, wherein the circuit court set forth the following relevant FOFs and COLs:

[FOF No. 4:] At the sentencing hearing, [Kaua] stipulated to the underlying fact that he was being sentenced for two or more felonies and was under a sentence of imprisonment for another felony in Cr. No. 90–1996[,] thereby satisfying the requirements of [HRS § ] 706–662(4)(a).

[FOF No. 5:] Based on this stipulation[,] the court concluded that [Kaua] was a multiple offender within the meaning of the statute.

[FOF No. 6:] The sentencing court also made specific findings justifying the conclusion that an extended term of imprison-

---

5. On March 31, 2000, Kaua filed a motion for reconsideration of sentence and/or clarification of presentence detention credit. The circuit court granted Kaua's motion for clarification of presentence detention credit; although the record does not contain an order denying Kaua's motion for reconsideration, both parties' briefs on appeal represent that the circuit court denied Kaua's motion for reconsideration after a hearing on April 18, 2000, the transcripts of which have not been included in the record.

6. HRPP Rule 35 provides:

**Correction or reduction of sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.... The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

ment was necessary for the protection of the public.

[FOF No. 7:] These findings included [Kaua's] history of substance abuse, his assaultive and threatening behavior, access to firearms, [Kaua's] inability to control his behavior under extreme stress, and the severe trauma [Kaua's] behavior caused the victim.

[COL No. 1:] [Kaua] challenges the extended term of imprisonment pursuant to [HRS § ] 706–662. [Kaua] argues that[,] pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his Fifth and Sixth Amendment rights were violated in that the initial complaint did not make reference to the possibility of an extended sentence and that the sentence enhancement should have been presented to a trier of fact to determine.

[COL No. 2:] Based on the [FOFs] hereinabove, this Court concludes that the imposition of the extended term of imprisonment was properly proven and imposed in this case, and moreover falls within the "prior conviction" exception cited in *Apprendi*. The condition precedent to the application of the extended term of imprisonment was a prior conviction either in the same case or in another case.

[COL No. 3:] The facts of conviction which exposed [Kaua] to an extended term of imprisonment were not in the nature of "elements" of the offenses charged or of a separate legal offense.

[COL No. 4:] The facts of this case are akin to *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) which was upheld in *Apprendi*.

[COL No. 5:] The Hawai'i Supreme Court[,] in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890 (1999), stated in a footnote that the factors listed in section 706–662(2)–(4) were not facts susceptible of jury determination.

On June 04, 2002, Kaua filed a timely notice of appeal in the present matter.

## II. STANDARDS OF REVIEW

### A. Questions Of Constitutional Law

■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,'" and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard."

*State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (citations omitted).

*State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001).

### B. Sentencing

■ [A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord*, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera*, 74 Haw. 424, 435, 848 P.2d 376, 381 (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry*, 61 Haw. 226, 231, 602 P.2d 13, 16 (1979). *Keawe v. State*, 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry*, 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" *Keawe*, 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau*, 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (brackets and ellipsis points in original).

### C. Statutory Interpretation

■ "[T]he interpretation of a statute ... is a question of law reviewable de

novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be

called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32 (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))).

## III.

*THE ASSESSMENT OF A DEFENDANT'S STATUS AS A "MULTIPLE OFFENDER," REQUISITE TO AN EXTENDED TERM OF IMPRISONMENT PURSUANT ·TO HRS § 706–662(4)(A), IS TO BE DETERMINED BY THE SENTENCING COURT.*

■ Kaua argues that the circuit court erred in denying his Rule 35 motion, on the basis that HRS § 706–662(4)(a) is unconstitutional as applied to him and, thus, that the extended indeterminate maximum terms of imprisonment that the sentencing court imposed upon him in connection with Counts II–IV and VIII–XIII, *see supra* section I, violated his rights under the fifth, sixth, and fourteenth amendments to the United States Constitution and the parallel provisions of the Hawai'i Constitution. More specifically, Kaua contends that (1) the assessment of a defendant's status as a "multiple offender" and (2) the finding that the defendant's "criminal actions were so extensive that a sentence of imprisonment for an extended indeterminate maximum term is necessary for protection of the public," interposed by HRS § 706–662(4)(a), *see supra* note 1, as preconditions to the imposition of an extended indeterminate maximum term of imprisonment, present questions of fact that must be answered by a jury. To support his contention, Kaua relies solely on the United States Supreme Court's decision in *Apprendi,* which, according to Kaua, expressly rejected any distinction between "sentencing factors" and "elements" of an offense, thereby abrogating this court's "intrinsic-extrinsic" analy-

sis enunciated in *Schroeder* and reaffirmed in *Tafoya*. Moreover, Kaua asserts that the prosecution's failure to set forth facts in its charging instrument that, if proven at trial, would support the imposition of an extended term of imprisonment violated his due process right to notice.

The prosecution counters that the sentencing court's imposition of extended term sentences in the present matter did not run afoul of *Apprendi*, and, therefore, that the circuit court did not err in denying Kaua's Rule 35 motion. The prosecution maintains that the *Apprendi* Court did, in fact, draw a distinction between facts relating to "sentencing factors," on the one hand, and "elements" of an offense, on the other, and that only the latter must be determined by the jury. Moreover, the prosecution asserts that this court's decision in *Tafoya* mandates that the requisite assessments, for purposes of imposing an extended term sentence under HRS § 706–662(4), be made by the sentencing court and not the jury, inasmuch as the facts relating to whether the defendant is a member of the class of offenders to which HRS § 706–662(4) applies are "extrinsic" in nature. We agree with the prosecution.

 It is settled that an extended term sentencing hearing is "a separate criminal proceeding apart from the trial of the underlying substantive offense," wherein "all relevant issues should be established by the state beyond a reasonable doubt." *State v. Kamae*, 56 Haw. 628, 635, 548 P.2d 632, 637 (1976). In *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1979), this court addressed the procedural protections to be accorded criminal defendants at an extended term sentencing hearing and announced a two-step process in which a sentencing court must engage in order to impose an extended term sentence. *Id.* at 76, 588 P.2d at 398. For purposes of a motion for an extended term of imprisonment under HRS § 706–662(4), the first step requires a finding beyond a reasonable doubt "that the defendant is a multiple offender, which finding may not be made unless the defendant is being sentenced for two or more felonies or is under sentence for a felony and the maximum terms of imprisonment authorized for

the defendant's crimes meet certain requisites." *Id.* In the event that the sentencing court finds that the defendant is a multiple offender under subsection (4), the second step requires the sentencing court to determine whether "the defendant's commitment for an extended term is necessary for the protection of the public." *Id.* at 77, 588 P.2d at 398.

> The determination that the defendant is a member of the class of offenders to which the particular subsection of [HRS] § [706–]662 applies involves "historical facts," the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing. . . . But when the status of the defendant has been established, the process by which the court determines that the defendant's commitment for an extended term is necessary for the protection of the public . . . is one which deals with the subject matter of ordinary sentencing.

*Id.* at 79–80, 588 P.2d at 400. As such, the first phase of the *Huelsman* two-step process must afford a defendant "the full panoply of constitutional protections guaranteed in criminal proceedings," *see State v. Melear*, 63 Haw. 488, 498–99, 630 P.2d 619, 627 (1981), which includes the rights to notice and an opportunity to be heard, cross-examination of witnesses appearing at the sentencing hearing, and the evidentiary safeguards set forth in the Hawai'i Rules of Evidence (HRE). *See Kamae*, 56 Haw. at 638, 548 P.2d at 638–39. By contrast, the procedural safeguards to which the second phase of the *Huelsman* two-step process is subject are those applicable to ordinary sentencing, and, therefore, "the HRE are not controlling." *State v. Loa*, 83 Hawai'i 335, 355, 926 P.2d 1258, 1278 (1996). Moreover, "[u]nder ordinary sentencing procedures, the court is 'afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity. This authority is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory and constitutional commands have not been observed.'" *State v.*

*Okumura*, 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995).

In *Schroeder*, this court addressed the question whether the defendant had a due process right to reasonable notice of the circuit court's intention *sua sponte* to impose a mandatory minimum prison term, pursuant to HRS § 706–660.1 (1993),[7] as an element of the defendant's sentence arising out of his conviction of *kidnapping* under circumstances in which the prosecution had affirmatively sought only the imposition of a mandatory minimum sentence in connection with the defendant's *robbery* conviction. *Schroeder*, 76 Hawai'i at 530–32, 880 P.2d at 205–07. The defendant argued on appeal that the mandatory minimum sentence imposed in connection with the kidnapping conviction was illegal, because (a) the indictment did not give him notice of the possibility of an enhanced sentence based on HRS § 706–660.1 and (b) at sentencing, the circuit court did not find beyond a reasonable doubt the "aggravating circumstances" requisite to a mandatory minimum sentence under HRS § 706–660.1—*i.e.*, the use or threat of using a firearm during the commission of a felony. *Id.* at 522, 880 P.2d at 197. In rendering its opinion, this court compared and contrasted the analysis set forth in *Huelsman*, on the one hand, and *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987), on the other, in order to glean their application to the parameters governing the imposition of an enhanced sentence. In doing so, this court distinguished between the nature of the "aggravating circumstances" germane to HRS § 706–662 (extended term sentencing) and those germane to HRS § 706–660.1 (sentence of imprisonment for use of a firearm).

[T]wo aspects of the *Huelsman* rule are significant. First, the "historical facts" pertinent to the imposition of extended prison terms pursuant to HRS § 706–662 are to be found by the sentencing court *after* the defendant's adjudication of guilt at trial by the trier of fact. Second, this particular fact-finding process is wholly independent of the allegation of any foundational "aggravating circumstances" in the indictment or complaint containing the charges against the defendant. *See Oyler v. Boles*, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). This is precisely why *[State v.] Apao*, [59 Haw. 625, 586 P.2d 250 (1978),] which did not involve HRS § 706–662 extended term sentencing, received no mention in *Huelsman* and why the *Estrada* court construed *Huelsman* as recognizing that such extended term sentencing was subject to "different procedures" than those applicable to other forms of "enhanced" sentencing. *See Estrada*, 69 Haw. at 230, 738 P.2d at 829.

In short, the *Huelsman* rule is limited to enhanced sentencing, such as extended prison terms pursuant to HRS §§ 706–661, 706–662, and 706–664, in which the "determination that the defendant is a member of the class of offenders to which the particular [statute] applies involves 'historical facts.'" *Huelsman*, 60 Haw. at 79, 588 P.2d at 400. This is because such "historical facts" are wholly *extrinsic* to the specific circumstances of the defendant's offense and therefore have no bearing on the issue of guilt *per se*. By contrast, if the "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, *intrinsic* to the "commission of the crime charged," then, in accordance with the *Estrada* rule, such aggravating circumstances "*must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact." *[State v.] Schroeder*, [10 Haw. App. 535, 545,] 880 P.2d [208, 212 (1992)].

---

7. HRS § 706–660.1 provides in relevant part:

**Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

. . . .

(b) For a class A felony—up to ten years. . . .

*Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203 (some brackets added and some in original) (emphasis in original). This court ultimately agreed with the ICA's holding that the *Estrada* rule applied to the defendant's appeal, inasmuch as the "aggravating circumstances" at issue—*i.e.,* the use or threat to use a firearm during the commission of a felony— were so "enmeshed" in the charged offenses that such circumstances should have been alleged in the charging instrument and determined by the trier of fact.

Five years later, in *Tafoya,* this court revisited the distinction between "extrinsic" and "intrinsic" facts, as addressed in *Schroeder,* in deciding whether the factual finding requisite to the imposition of an enhanced sentence pursuant to HRS § 706-662(5), *see supra* note 1, must be made by the trier of fact or the sentencing court. *Tafoya,* 91 Hawai'i at 269–70, 982 P.2d at 898–99.

> In reviewing our previous case law, it is apparent that "intrinsic" factors, required to be pled in the indictment and found by the jury, are distinguishable in that they are contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense. Contrarily, "extrinsic" factors are separable from the offense itself in that they involve consideration of collateral events or information. Occurrence at a prior time is indicative, although not dispositive, of a conclusion that a factor is "extrinsic."

*Id.* at 271, 982 P.2d at 900 (footnote omitted). This court held "that findings regarding (a) the age or handicapped status of the victim and (b) whether '[s]uch disability is known or reasonably should be known to the defendant' entail 'intrinsic' facts" that are so "inextricably enmeshed in the defendant's actions in committing the offense charged . . . that the Hawai'i Constitution requires that these findings be made by the trier of fact[.]" *Id.* at 271–72, 982 P.2d at 900–01. *Tafoya,* therefore, overruled *Huelsman* to the extent that the blanket rule that *all* factual findings implicated in HRS § 706–662 were to be made by the sentencing judge no longer applied to subsection (5), thereby underscoring the point that the requirement that "intrinsic" facts must be determined by the trier of

fact for purposes of extended term sentencing "rests upon the necessity of upholding a defendant's constitutional rights to trial by jury and procedural due process." *Id.*

*Tafoya* also reviewed the pertinent federal authority touching upon the constitutional validity of allowing a sentencing judge to make factual findings with respect to the imposition of an enhanced sentence. 91 Hawai'i at 272–73, 982 P.2d at 901–02. In *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the United States Supreme Court addressed the question whether certain provisions of a carjacking statute, which prescribed enhanced sentencing penalties, created additional elements of the offense, which would have to be found by the jury, or merely described sentencing considerations, which could permissibly be determined by the sentencing judge. In concluding the former, the *Jones* Court essentially drew a distinction, as this court did in *Schroeder* and *Tafoya,* between (1) factual findings that were inextricably enmeshed in the charged offense and therefore probative of the defendant's commission of that offense and (2) factual findings that were wholly independent of the offense charged in the indictment and spoke only to characteristics of the defendant that were pertinent to the appropriate degree of punishment. The *Jones* Court noted that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 232, 119 S.Ct. 1215. Thus, *Jones* declared that "any fact (other than [a] prior conviction) that increased the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 526 U.S. at 243, 119 S.Ct. 1215 n. 6. *Tafoya* recognized, however, that to extend the *Jones* rationale to "extrinsic" facts "would contaminate the jury's required focus on the factual circumstances surrounding the [charged] offense and potentially require the introduction of inadmissible prior bad act or overly prejudicial evidence to require the jury to make

such findings." *Tafoya*, 91 Hawai'i at 273 n. 15, 982 P.2d at 902 n. 15.

The United States Supreme Court decided *Apprendi* almost ten months after our decision in *Tafoya*. At issue in *Apprendi* was a New Jersey "hate-crime" law,[8] which provided for the imposition of an enhanced sentence based upon a finding, to be made by the sentencing judge by a preponderance of the evidence, that the charged offense was committed with a biased purpose. *Apprendi*, 530 U.S. at 468–70, 120 S.Ct. 2348. The United States Supreme Court held the New Jersey law unconstitutional, emphasizing that the "relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494, 120 S.Ct. 2348. In other words, a finding that the defendant committed the charged offense with a biased purpose, of necessity, required an assessment of the "elemental" facts upon which the indictment was based. That being the case, the *Apprendi* Court held that findings that implicated "elemental" facts requisite to imposing an enhanced sentence must be charged in the indictment, submitted to the jury, and proved by the prosecution beyond a reasonable doubt.[9] *Id.* at 490, 120 S.Ct. 2348; *accord Estrada* 69 Haw. at 230, 738 P.2d at 829 (relying on *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), *subsequent resolution*, 66 Haw. 682, 693 P.2d 405 (1984), in holding that "aggravating circumstances which, *if proved*, would result in the application of enhanced sentencing" must be alleged in the indictment and found by the jury) (emphasis in original); *compare Almendarez–Torres v. United States*, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that a statutory subsection authorizing an enhanced sentence based on the defendant's

prior conviction constituted a "penalty provision," and not a separate offense, and that only the latter must be alleged in the charging instrument and proved by the prosecution beyond a reasonable doubt).

In *State v. Carvalho*, 101 Hawai'i 97, 63 P.3d 405 (App.2002), the Intermediate Court of Appeals (ICA) addressed the questions whether, in light of *Apprendi*, HRS § 706–662 was unconstitutional on its face and whether *Apprendi* required a jury to make the requisite findings under HRS §§ 706–662(1) and (4) in order to support an extended term sentence. The ICA, reading *Tafoya* to be in harmony with *Apprendi*, held that HRS § 706–662 was not constitutionally infirm:

> Under HRS §§ 706–662(1) and (4), the sentencing judge first finds the facts relating to the defendant's prior felony convictions that place the defendant within the class of offenders subject to extended term sentencing, . . . "the proof of which *exposes* the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt *exposes* him to ordinary sentencing."

*Carvalho*, 101 Hawai'i at 111, 63 P.3d at 419 (quoting *Huelsman*, 60 Haw. at 79, 588 P.2d at 400) (emphasis in original).

Although *Carvalho* focused primarily on HRS §§ 706–662(1) and (4), which set forth the prerequisites to an extended term of imprisonment based on the defendant's status as a persistent or multiple offender, the decision showcases the fundamental distinction between the nature of the predicate facts described in HRS §§ 706–662(1), (3), and (4), *see supra* note 1 on the one hand, and those described in HRS §§ 706–662(5) and (6), *see id.*, on the other. Specifically, the facts at issue in rendering an extended term sentencing determination under HRS §§ 706–662(1),

---

**8.** HRS § 706–662(6), *see supra* note 1, which provides for the imposition of an extended term of imprisonment based on the defendant's status as a "hate crime offender," is similar in substance to the New Jersey hate-crime statute at issue in *Apprendi*. *See* N.J. Stat. Ann. § 2C:44–3(e) (West Supp.1999–2000) (providing for an extended term of imprisonment if the trial judge finds, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimate an individual or

group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity").

**9.** The United States Supreme Court reaffirmed its holding in *Apprendi* in *Ring v. Arizona*, 536 U.S. 584, 608–09, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (overruling *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)).

(3), and (4) implicate considerations completely "extrinsic" to the elements of the offense with which the defendant was charged and of which he was convicted; accordingly, they should be found by the sentencing judge in accordance with *Huelsman* and its progeny. The facts at issue for purposes of HRS §§ 706–662(5) and (6), however, are, by their very nature, "intrinsic" to the offense with which the defendant was charged and of which he has been convicted; accordingly, they must be found beyond a reasonable doubt by the trier of fact in order to afford the defendant his constitutional rights to procedural due process and a trial by jury. *Tafoya*, 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203.

In light of the foregoing, we cannot accept Kaua's argument that *Apprendi* mandates that a "multiple offender" determination, for purposes of HRS § 706–662(4)(a), must be made by the trier of fact and, therefore, that the circuit court's order denying his Rule 35 motion was unconstitutional. The facts foundational to Kaua's extended terms of imprisonment in connection with Counts II–IV and VIII–XIII, pursuant to HRS § 706–662(4)(a), fell outside the *Apprendi* rule, and, thus, the ultimate finding that he was a "multiple offender" whose extensive criminal actions warranted extended prison terms was properly within the province of the sentencing court. 530 U.S. at 490, 120 S.Ct. 2348; *Carvalho*, 101 Hawai'i at 111, 63 P.3d at 419.

Moreover, a review of the record on appeal supports the circuit court's FOFs and COLs with respect to the sentencing court's imposition of extended term sentences in connection with Counts II–IV and VIII–XIII. First, at the hearing on the prosecution's motion for extended terms of imprisonment, Kaua stipulated to the fact that he was a "multiple offender," for purposes of HRS § 706–662(4)(a), thereby conceding that he had satisfied the first step of the *Huelsman* two-step process for the imposition of an extended term sentence. Second, the sentencing court rendered extensive findings— *i.e.*, Kaua's history of alcohol and substance abuse, assaultive and threatening behavior (which included abuse of a household member and terroristic threatening), and access and use of firearms—to support its conclusion that Kaua's "criminal actions were so extensive that a sentence of imprisonment for an extended term [was] necessary for protection of the public." Thus, inasmuch as the sentencing court's imposition of extended maximum indeterminate terms of imprisonment in connection with Counts II–IV and VIII–XIII passed muster under the Hawai'i and United States Constitutions, the circuit court did not err in denying Kaua's Rule 35 motion.

## IV. CONCLUSION

In light of the foregoing, we affirm the circuit court's findings of fact, conclusions of law, and order denying Kaua's Rule 35 motion, filed on May 6, 2002.