STATE OF HAWAII, Plaintiff-Appellee, *v.* CHRISTINE LUNCEFORD, Defendant-Appellant

NO. 8688

(D.C. NO. 1982-1752)

JULY 20, 1983

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ.,
AND CIRCUIT JUDGE FONG
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The question is whether the State adduced sufficient evidence of an offer to engage in sexual conduct because the complaining police officer neglected to explain or define two vivid phrases purportedly employed by defendant-appellant in her proposal to him. We have no reason to think the district court required further enlightenment on what was meant by "blow job" and "make love" before finding defendant was referring to sexual conduct by the use of the terms, and we affirm her conviction of prostitution.[1]

I.

The defendant was charged in the District Court of the First Circuit that she "did engage in, or agree or offer to engage in, sexual conduct with another person in return for a fee thereby committing the offense of Prostitution, in violation of Section 712-1200 of the Hawaii Revised Statutes." The charge faithfully tracked the language of the statute. *See supra* note 1.

At trial, the primary evidence adduced against the defendant consisted of the complaining officer's testimony. According to the officer, the defendant approached him as he walked on Kuhio Avenue in Waikiki and inquired whether he was cold. An affirmative answer brought a suggestion about going

---

[1] The statute proscribing prostitution, HRS § 712-1200, in pertinent part provides:

Prostitution. (1) A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee.

(2) As used in subsection (1), "sexual conduct" means "sexual intercourse," "deviate sexual intercourse," or "sexual contact," as those terms are defined in section 707-700.

And "sexual contact" is defined as "any touching of the sexual or other intimate parts of a person not married to the actor, done with the intent of gratifying the sexual desire of either party" by HRS § 707-700(9).

"inside," which turned out to be an apartment several blocks away. She then asked if he could spend fifty dollars, and he countered with a question on the length of time the sum would cover. A response that there would be "no time limit" resulted in an agreement to proceed to "her place."

When the couple arrived there, the defendant asked for the fifty dollars; but before the officer handed the requested sum to her, he asked how she was going to satisfy him. The response was, "I'm going to give you a blow job then you can make love to me." The officer then gave her fifty dollars in "pre-recorded money." The defendant's arrest followed shortly thereafter when she returned from the bathroom with her clothes off.

At the close of the prosecution's case, the defendant moved for a judgment of acquittal, asserting as grounds "the State's failure to present evidence of any type of sexual conduct or sexual intercourse and the State's failure to explain or define the meaning of 'blow job.'" In denying the motion, the trial judge's comment was: "I think in this day and age, it's pretty obvious what a blow job means." And when pressed by counsel to "give the plain meaning of the words," the court provided him with this definition: "Oral sex, fellatio."

The motion for acquittal was renewed at the close of trial, and counsel advanced a similar argument. But the court was no more receptive of his contention that the statement without elucidation did not serve as proof of a proposal to engage in sexual conduct.

II.

Defendant's principal thesis, as the State observes in its brief, was advanced recently before this court, but rejected. We disposed of the argument in summary fashion in a memorandum opinion since no doubt existed, for us at least, that a reference to "blow job" in that factual context could only have sexual connotations. The term was employed in similar circumstances here, but our decision to accord the case more than summary treatment does not carry any suggestion of greater merit in this appeal. The opinion is being published in this instance to spare our trial courts the imposition of dealing with similar contentions in the future.

A.

An essential element of all testimony is the process of placing the results of the witness' observations before the tribunal, "i.e., the process of *narration* or communication." 3 Wigmore, *Evidence* § 766 at 147 (Chadbourn rev. 1970) (emphasis in original). "Its office is to make intelligible to the tribunal the knowledge and recollection of the witness, whatever they may amount to, affirmative or negative, useful or trivial." *Id.* Hence, our rules of evidence are designed in part to ensure that testimony presented to a trial court is intelligible. Rule 603.1 of the Hawaii Rules of Evidence disqualifies a witness who is "incapable of expressing himself so as to be understood, either directly or through interpretation by one who can understand him."

Although the defendant does not question the qualifications of the State's principal witness *per se,* she contends the crucial portion of his testimony was not understandable. This, she claims, gave rise to an insufficiency of evidence and failure of proof on a necessary element of the offense. The claim is totally unfounded.

In recounting the circumstances surrounding defendant's arrest for prostitution at trial, the police officer verbalized her proposition exactly as it allegedly had been conveyed to him. She asserts this was fatal; for in her view, an explication of the relevant terms was required before the statement could be deemed evidence of an offer of sex for hire. The implication is that testimony not couched in terms found in a dictionary is not worthy of consideration as evidence. The notion is, of course, ridiculous.

The officer testified that defendant communicated the course of action she contemplated for the engagement by use of the phrases "blow job" and "make love." Granted, these are not terms taught in school; nor are they to be found in most standard dictionaries. Yet, they were readily intelligible to the trial judge. We likewise could easily oblige counsel with pertinent definitions in a more formal yet not more familiar lexicon. And we entertain little doubt that the terms would be recognized by a large segment of the adult population in Hawaii as expressions describing sexual conduct in slang.

"American slang . . . is the body of words and expressions frequently used by or intelligible to a rather large portion of the general American public, but not accepted as good, formal usage by the majority." Flexner, *Preface* to *Dictionary of American Slang* at vi (2d supp. ed. 1975). It is the "very informal usage in vocabulary and idiom that is characteristically more metaphorical, playful, elliptical, vivid, and ephemeral than ordinary language." *The Random House Dictionary of the English Language* 1338 (unabr. ed. 1966). These qualities probably account for its widespread use in contemporary American society, especially in speech. An evening of television viewing would certainly verify its popularity.

**B.**

As in much of American slang, the geneses of the expressions in question can in all likelihood be traced to the cant, jargon, or argot of special small segments of the population. *See* Flexner, *supra.* Earlier, they may well have been understood only by ladies of pleasure and their clients. But the popularity of the expressions has increased, and a large number of the general public now uses or understands them. Some lexicographers have gone so far as to say that "blow," *"[a]lthough taboo . . . is the most common word for oral intercourse and is in wide use." Dictionary of American Slang, supra,* at 45 (emphasis in original). And "blow job" has even found its way into a respected dictionary of the English Language. *See The American Heritage Dictionary of the English Language* 144, 483 (1971) (blowjob, fellatio). Thus, an acceptance of defendant's thesis that the unexplained expressions ascribed to her were devoid of evidentiary value would only betray ignorance on our part of the society we live in and its realities.

The discussion here does not denote our preference of slang and informal usage over standard English and formal usage. It merely sets forth our reasons for rejecting defendant's thesis that the State failed to meet its burden of proof by not having expressions in slang familiar to the trial court translated into formally accepted terminology. The State must still meet its burden in every criminal case with intelligible evidence, and it

still runs a risk of non-persuasion when testimony is presented in unfamiliar language. In this case, however, the expressions in question were familiar and intelligible to the trier of fact. And it was satisfied that every element of the charged offense had been proved beyond a reasonable doubt. *State v. Maxwell,* 62 Haw. 556, 561, 617 P.2d 816, 819 (1980); *State v. Lloyd,* 61 Haw. 505, 515, 606 P.2d 913, 920 (1980); *State v. Bannister,* 60 Haw. 658, 660, 594 P.2d 133, 135 (1979); *State v. Cuevas,* 53 Haw. 110, 113, 488 P.2d 322, 324 (1971); HRS § 701-114. We find no basis in the record for disagreeing. We also see no merit in the other claims of reversible error raised by the defendant.

Affirmed.

*Isaac K. Smith,* Deputy Public Defender, on the brief for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.