■ ANONYMOUS G., Appellant-Respondent, v ANONYMOUS G., Respondent-Appellant.—Order, Supreme Court, New York County (Alfred M. Ascione, J.), entered on or about March 2, 1987, which granted defendant-respondent's motion to confirm the report of Special Referee Alex Colgan, recommending that respondent be granted increased, unsupervised visitation with the parties' minor children, and which granted plaintiff-appellant's cross motion to vacate the report of the Special Referee to the extent of vacating the recommendation that respondent not be obligated to pay arrears due and owing for child support, and which further directed that the expanded visitation not take place until such time as defendant commences

and makes continuous payment of his $75 weekly child support obligation and satisfies all arrears due and owing for child support, modified, on the law, the facts, and in the exercise of discretion, to allow the respondent supervised visitation only, and otherwise affirmed, without costs.

This case presents a very disturbing picture of two young children who have become pawns in a destructive and debilitating battle waged by their father, respondent herein, who has been found by two Justices of the Supreme Court and the New York State Department of Social Services to have engaged his minor daughter in inappropriate and exploitative sexual conduct. Justice Richard Wallach, at the conclusion of an eight-day hearing in Supreme Court in 1983, found that the daughter and her brother were "primary weapons" used by respondent against his former wife and in-laws; that his "fury * * * against those people has overcome every rational consideration" causing respondent "to behave in a way which is totally detrimental, and if not arrested, ruinous to the welfare of these children."

The parties were divorced in 1980 and appellant was granted custody of the children. Respondent was granted supervised visitation and ordered to pay $75 per week for child support. In March 1981 an order was entered enjoining respondent from harassing appellant and the children. In April 1983, appellant's mother filed a report of suspected child abuse with the Westchester County Department of Social Services, alleging that respondent was sexually exploiting his daughter. This report was under investigation when the hearing before Justice Wallach began in June 1983.

It was established during those proceedings that the daughter, at the age of 3½, had been diagnosed as "dangerously and sexually overstimulated". However, instead of trying to help the child overcome this problem, Justice Wallach found that respondent permitted and indeed encouraged the child to play "games" involving genital touching and "exaggerated nudity, which he [respondent] thinks is perfectly healthy". Respondent had also repeatedly harassed appellant and her family and denigrated them, using profane and obscene language in the presence of the children. Justice Wallach characterized respondent as "a person whose own ego and whose own compulsive requirements overwhelm him so that the real impact of what he is doing [to] these children is utterly lost". To protect the daughter, who was "hysterical at the thought that she would face her father", and to protect her brother, the court terminated respondent's right to overnight visitation

and further limited respondent to 2 or 3 mealtime visits in the children's home area in Westchester County.

Three months later, when respondent sought modification of the court's order, Justice Wallach stated, after reading respondent's papers, that "one might suppose that he has been triumphantly vindicated in all his past conduct, and the only task remaining for the court is to ratify the details of his exoneration, and perhaps place his name in nomination as father of the year." In August 1983, the local child protective service had determined that there was credible evidence supporting the report of respondent's sexual abuse of the daughter. The Westchester County police officer and the social worker who had investigated the report gave testimony which, Justice Wallach noted, suggested criminal liability under Penal Law § 130.65.

The court pointed out respondent's defiance of previous orders requiring him to pay child support and his "systematic course of harassing conduct", the net effect of which was "to terrorize his children and seriously impair their ability to live a normal life." Respondent's motion was denied in all respects. Justice Wallach ordered that the restrictions on respondent's visitation continue until such time as Dr. Christine Masters, who was treating the daughter in psychotherapy, certified to the court that it would be in the child's best interest for respondent to have more extended visitation. Dr. Masters, a developmental psychologist with the Rockland County Community Mental Health Center, first evaluated her in April 1983, at the request of the local child protective service as part of their investigation into the report of suspected sexual abuse by respondent. She has been the daughter's psychotherapist since that time.

In early 1984, this matter was again before the Supreme Court upon a motion by appellant to suspend respondent's visitation pending a report from Dr. Masters that the children would be able to adjust to their father's behavior. After Justice Wallach recused himself, hearings were held before Justice Shea.

Justice Shea found that since the proceedings before Justice Wallach, respondent had "continued to act in violent, hostile and inappropriate ways to the grave detriment of his children." Respondent had continued to "overstimulate [the daughter] sexually" by permitting the children to draw on his body below his bathing trunks while at the beach, by playing a "game" in which the children were permitted to remove his belt and unzip his pants in a public restaurant, by forcing his

daughter to accept a "wet kiss" in which respondent inserted his tongue in her mouth, and by sending the children a postcard with a message referring to "wet kisses". The court also found that respondent's behavior was "wild and angry" based on testimony that respondent assaulted appellant and tried to take control of her car as she was driving away with the children who were in the back seat. On more than one occasion respondent used profanity in front of the children, referring to their mother using obscene anatomical terms. Respondent told the daughter that Dr. Masters was "a liar" and otherwise attempted to undermine the therapeutic relationship that the doctor had established with this child.

Dr. Masters testified that the daughter was anxious, depressed and withdrawn and that these symptoms became worse when respondent's visitation was increased. The child has also exhibited "suicidal ideation". Respondent's testimony, that the child once said that she wanted to climb over a 50-foot fence and jump down, corroborated this. There was also testimony from another psychiatrist, who had evaluated both children, that the son had been seriously traumatized emotionally by the violence and threats of violence he had observed in the interactions between his parents, and that as a result he had retreated into a fantasy world. The son, who was then four years old, was not fully toilet trained and the doctor attributed this to his fears and insecurity. Respondent called Dr. Joel Feiner, a psychiatrist. Justice Shea, however, rejected Dr. Feiner's conclusion that the daughter was somewhat anxious but not in substantial distress, as contrary to the "overwhelming weight of the evidence".

Respondent also called five witnesses who testified to the warm relationship which they had observed between respondent and the children. However, Justice Shea found that this testimony was not inconsistent with the other evidence of respondent's "uncontrolled, violent and frightening behavior" toward appellant in the children's presence; his coercive, intimidating and sexually provocative behavior towards his daughter.

Justice Shea found that visitation "as it has been exercised by defendant since June 1983 has clearly been detrimental to both children." However, she concluded that the complete termination of respondent's visitation would also be harmful and "would inevitably leave unanswered questions and a gap of major importance in their lives." The court therefore ordered limited visitation under strict supervision and stated that modification of the order could be considered "when there

is evidence that defendant has gained a measure of control over and insight into his behavior". Justice Shea also directed that respondent continue making payments of $75 per week for child support. No appeal was taken from this order.

This was the record before the court in 1986 when Justice Ascione referred respondent's motion for modification of visitation to the Special Referee for a hearing and report on whether supervised visitation with the children should continue. Respondent, who appeared *pro se,* again called Dr. Feiner, then an associate professor in the Department of Psychiatry at the Albert Einstein College of Medicine. Dr. Feiner had interviewed the children for a total of 2½ hours, alone and with their father, on March 1, 1986.

In his opinion, the supervised visitation was detrimental to the children because "the supervised setting is another indication that the father doesn't have control over his world and he becomes then devalued and he also is seen as a figure who can only be supervised." The impression conveyed to the children, of their father as a dangerous and "devalued" person, was of paramount importance to Dr. Feiner. When asked, on cross-examination, whether he considered specific examples of respondent's behavior, which had been established in the hearings before Justices Shea and Wallach, to be equally as harmful as the image of a "devalued" father, Dr. Feiner was either unable to give an opinion or did not find the conduct harmful. We note that the Special Referee repeatedly, and improperly, prevented appellant's counsel from posing questions to Dr. Feiner based on findings made in the prior proceedings, which were directly relevant to the doctor's evaluation of the children's best interests.

Dr. Masters was again called by appellant to testify at this hearing. She refused, however, to produce the notes of her therapy sessions with the daughter on the ground that respondent, on prior occasions, had confronted the child with information revealed in court regarding her therapy, thereby undermining her relationship with Dr. Masters. As a result, the Special Referee found Dr. Masters' testimony to be filled with "vague generalities" and he generally did not credit her analysis of the daughter's condition or her "unqualified attribution to defendant of full responsibility" for her chronic depression.

Despite Dr. Masters' contact with the daughter and the family for over 3½ years, the Referee accepted Dr. Feiner's assessment of the children's needs and best interests, even though Dr. Feiner had had only limited contact with the

children and his opinion had previously been rejected by Justice Shea as contrary to the overwhelming weight of the evidence. The Referee also found that respondent had ceased overstimulating the daughter sexually, contrary to Dr. Masters' assertion that respondent persisted in inflicting "wet kisses" on her, forcing his tongue into her mouth while pinning her arms behind her back. Dr. Masters also testified that the daughter was uncomfortable even during the supervised visitation because of the lax supervision provided by the monitors.

The Referee concluded that the testimony "amply establishes" that respondent had gained the measure of control over, and insight into, his behavior that Justice Shea had set as a precondition for modifying the supervised visitation. After reviewing this lengthy record, we cannot agree.

There was uncontroverted testimony that on Father's Day of 1986, respondent physically assaulted appellant in the presence of the children when, in violation of a court order, he arrived for his visitation ahead of schedule. An argument ensued and respondent grabbed appellant's wrist, hit her and called her obscene names. On another occasion when a chaperone failed to appear to supervise the visitation and the children's grandmother attempted to leave the visitation site with them, respondent threw himself in front of the car and called the grandmother obscene names. He attempted to pull the son out of the car through the window, terrifying the children. Respondent also admitted that he had violated the protective order granted by Justice Shea by going to appellant's house to see the children, who ran into another room in fright and locked the door. It was also established that since April 1985, respondent had not complied with the court's order directing him to continue the $75 weekly child support payments.

Respondent's performance during the hearings before the Referee provides the most compelling evidence that respondent lacks all insight into his own behavior and its effect on the children. As in the papers submitted to Justice Wallach, respondent presented himself as a man who has been wronged by the world, claiming that his behavior has been so far above reproach as to make him a "superior" father. Nowhere does respondent acknowledge in any way that his behavior might be unseemly or that the judicial findings of sexual misconduct have any basis in fact. Nor, is there any indication that respondent has sought therapy to help him gain the insight and control he so clearly lacks. In his *pro se* brief on appeal,

respondent asserts that in the three years since Justice Shea's "heinous and draconian order, I have continued my unblemished record" as a devoted father. Regarding Dr. Masters' testimony to the contrary, appellant claims that she is "clearly a fraud" and has "consistently lied" to the court.

Given the very substantial record which preceded this motion, and the less than substantial basis for Dr. Feiner's findings, which were contradicted by Dr. Masters, we reject the Referee's report as unsupported by the record (Kardinis v Velis, 90 AD2d 727 [1st Dept 1982]).

Further confirmation of respondent's dangerous immaturity and lack of judgment was offered to the court in appellant's cross motion to disaffirm the Referee's report. On January 7, 1987, one week after the Referee had written his report, respondent appeared for a supervised visitation with a book he had brought as a gift for the children. The flyleaf of this 260-page book is inscribed by respondent. Appellant submitted the book, titled "Dear Mr. Fantasy", to the court and a portion of it is part of the record herein. The excerpt includes anecdotes about marihuana smoking and LSD use and is replete with scatological references and obscene language. If this were not enough, the book contains several photographs of women in various stages of undress, and one of a male and female figure in what appears to be an act of copulation. That respondent would present such material to children nine and seven years old speaks volumes about his insight and judgment.

We have reviewed respondent's challenge to that portion of the order making the expanded visitation conditional on his payment of the child support arrears and his continuous payment of $75 weekly in child support, and find it to be without merit. Concur—Murphy, P. J., Sullivan, Asch and Rosenberger, JJ.