118 P.3d 1222

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Ronald KALANI, Defendant–Appellant.**

No. 26767.

Supreme Court of Hawai'i.

Sept. 7, 2005.

James S. Tabe, Deputy Public Defender, on the briefs, for defendant-appellant.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Defendant-appellant Ronald Kalani appeals from the July 23, 2004 judgment of conviction and sentence of the Circuit Court of the Second Circuit, the Honorable Joel E. August presiding, adjudicating Kalani guilty of and sentencing him for two counts of

sexual assault in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 707–732(1)(b) (Supp.2003).[1] On appeal, Kalani claims that the trial court erred in: (1) denying his motion to dismiss the indictment; (2) denying his motion for a judgment of acquittal; and (3) finding him guilty of two counts of sexual assault in the third degree after a bench trial. Kalani argues that the trial court erred in concluding that, "in the context of this case, the mouth and tongue of a nine-year-old child's body must be considered 'intimate parts' within the meaning of HRS § 707–700 … and the acts committed by [Kalani] must be considered sexual in nature." For the following reasons, we affirm Kalani's conviction and sentence.

## I. BACKGROUND

On February 9, 2004, Kalani was charged by indictment with two counts of sexual assault in the third degree. The prosecution alleged that, on January 5, 2004, Kalani kissed the nine-year-old complaining witness twice and that, on both occasions, Kalani inserted his tongue into her mouth.

### A. Motion to Dismiss

On April 22, 2004, Kalani moved to dismiss the indictment, alleging that the prosecution failed to adduce sufficient evidence to support the charges against him. Kalani argued that the alleged conduct supporting the two counts—kissing the complaining witness on the lips and placing his tongue into her mouth—did not constitute "sexual contact" as defined in HRS § 707–700 (1993).[2]

A hearing was held on May 12, 2004, and the trial court denied Kalani's motion in an order filed on June 21, 2004, concluding, *inter alia:*

7. HRS § 707–700, which defines "sexual contact," currently does not indicate what body parts are to be considered "sexual or other intimate parts" for the purpose of that section. In addition, no other section of the Hawai'i Penal Code attempts to identify what parts of the body are "sexual or other intimate parts." It is clear, however, that based on their general or popular use or meaning, the definition of "intimate parts" would be much broader than the definition of "sexual parts."

It is also clear that intimacy, with respect to parts of the body, must be viewed within the context in which the contact takes place. In other words, a body part that might be intimate in one context might not be intimate in another. *People v. Rivera,* 138 Misc.2d 570, 525 N.Y.S.2d 118 (N.Y.Sup.Ct.1988). Very few things can be more personal or private than the tongue or the interior of one's mouth in situations where they may be in contact with the bodily parts of another person. *See, e.g., People v. Rivera, supra; Anonymous G. v. Anonymous G.,* 132 A.D.2d 459, 517 N.Y.S.2d 985 (N.Y.App.Div.1987).

8. In the context of this case, wherein an adult male allegedly twice, and without consent, puts his mouth on the mouth of a nine-year-old female and then forced his tongue into her mouth, the mouth and tongue must be considered intimate parts of the child's body and the act itself must be considered sexual in nature. In the Court's view, such conclusions are consis-

---

1. HRS § 707–732(1)(b) provides that "[a] person commits the offense of sexual assault in the third degree if … [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]"

2. HRS § 707–700 provides:
 "Sexual contact" means any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or

other material intended to cover the sexual or other intimate parts.

Effective May 10, 2004, HRS § 707–700 was amended in 2004 to read:
 "Sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

tent with the intent of our legislature to protect children from sexually oriented physical conduct of adults. Such an intent is clearly evident in the legislative history of HRS § 707–732. *See* Conf. Comm. Rep. No. 66, in 201 Senate Journal, at 881–82; Sen. Stand. Comm. Rep. No. 1189, in 2001 Senate Journal, at 1392; Sen. Stand. Comm. Rep. No. 1394, in 2001 Senate Journal, at 1486; and Hse. Sand. Comm. Rep. No. 704, in 2001 House Journal, at 1388.

9. The Court is not concluding that the mouth and tongue in all circumstances or contexts are "intimate parts."

10. Relative to the issue of notice as to what conduct might subject an actor to penal liability for due process purposes, it would be absurd to conclude that a reasonable person of sound mind would consider the conduct alleged herein to be merely offensive touching, rather than conduct that rises to the level of sexual contact as proscribed by HRS § 707–700.

11. For the reasons given above, the Court concludes that in this case there was legal and competent evidence which established probable cause for the Grand Jury to conclude that the Defendant violated HRS § 707–732(b)(b). Probable cause is established when it can be said that a reasonable and prudent person viewing the evidence would have a strong suspicion that a particular crime has been committed. *State v. Kuba,* 68 Haw. 184, 191, 706 P.2d 1305, 1310 (1985). Therefore, the Defendant's motion to dismiss the indictment based on insufficient evidence must be denied.

## B. *Bench Trial*

Trial took place on June 1 and 3, 2004. The complaining witness, her grandmother [hereinafter, Grandmother], and Maui Police Detective Richard Martinez testified for the prosecution. The complaining witness testified that, on January 5, 2004, Kalani approached her, told her that she was a "pretty girl," and asked her for a kiss. According to the complaining witness, Kalani then put his tongue in her mouth twice, touching her tongue with his own.

Grandmother testified that, just before she went to the restroom, she had observed the complaining witness talking with Kalani outside of her home. When Grandmother exited from the restroom, she found the complaining witness crying hysterically. Grandmother testified that the complaining witness related to her that Kalani had told her "what a beautiful girl she was and was running his hands through her hair and kissed her, stuck his tongue in her mouth," and that "[w]hen [the complaining witness] tried to pull away, he held the back of her head and kissed her again putting his tongue in her mouth."

Detective Martinez testified that on January 9, 2004, he questioned Kalani regarding the complaining witness's allegations and that Kalani made an audiotaped statement. The audiotape was admitted into evidence without objection and played at trial. During the interview, Kalani admitted that he twice kissed the complaining witness and that, on both occasions, he placed his tongue into her mouth. Kalani indicated that the complaining witness did not give him permission to kiss her. Kalani also stated that he believed the complaining witness was eight or nine years old at the time and that he felt what he had done was wrong.

### 1. Motion for Judgment of Acquittal

After the prosecution presented its case, the defense moved for a judgment of acquittal. The defense conceded that sufficient evidence was adduced demonstrating that Kalani committed the acts alleged by the prosecution, but argued that "the actual acts involved, namely mouth-to-mouth and tongue-to-tongue contact is not sexual contact, is not sexual assault." Defense counsel opined that the conduct in the instant case constituted the offense of harassment. The trial court denied the defense's motion, concluding, *inter alia:*

For the definition of sexual contact, the court will refer to 707–700 which indicates

that sexual contact means any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothes or other material intended to cover the sexual or other intimate parts.

In the court's mind, the question is whether in the context of the facts of this case, the mouth, and in particular, the tongue of the minor involved here would be seen to be an intimate part of her body as that term has been used, and I think in the context of this case I think that it does amount to an intimate part of this child's body.

I think that perhaps the decision of the court as to whether this is a sexual contact or not would be quite frankly quite different if in playing around in some way let's say the defendant had poked his finger into the mouth of the child and it went in and it penetrated a small amount and was making some type of joke of sorts that had nothing to do with sex. I don't think necessarily under those circumstances the court would necessarily find that would amount to sexual contact.

Within the context of this particular case I think the child's mouth, and in particular, her tongue is an intimate part as that term was intended to be meant by the legislature for this particular crime, and on that basis I am going to deny the motion.

After the court ruled on the motion for judgment of acquittal, the defense declined to present any evidence.

2. **Judgment of Conviction and Sentence**

Based upon the evidence presented, the trial court found that, on two separate occasions, Kalani forcibly placed his mouth on the complaining witness's mouth without her consent. During both occasions, Kalani forced his tongue into the mouth of the complaining witness, and his tongue touched the complaining witness's tongue "at some point." The trial court also found that, at the time,

the complaining witness was nine years old and that Kalani was fifty-five years old. The trial court concluded that Kalani was guilty of two counts of sexual assault in the third degree. On July 23, 2004, Kalani was sentenced to a five-year term of imprisonment on each count, with both terms to run concurrently. Kalani timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

■ "The interpretation of a statute is a question of law reviewable de novo." State v. Kaua, 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–80 (2003) (citations, brackets, and ellipsis points omitted).

### B. Constitutionality of a Statute

■ "The constitutionality of a statute is a question of law which is reviewable under the right/wrong standard." State v. Bates, 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997) (citations omitted).

## III. DISCUSSION

■ The sole issue in the instant case is whether Kalani's conduct constitutes "sexual contact" under HRS § 707–700.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Kaua, 102 Hawai'i at 8, 72 P.3d at 480.

### A. Plain Language of the Definition of "Sexual Contact" Under HRS § 707–700

■ Initially, "courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legiti-

mately found which will give force to and preserve all words of the statute." *State v. Mueller*, 102 Hawai'i 391, 395, 76 P.3d 943, 947 (2003) (quoting *State v. Cummings*, 101 Hawai'i 139, 145 n. 4, 63 P.3d 1109, 1114 n. 4 (2003)). Under HRS § 707–700, " '[s]exual contact' means any touching of the sexual *or other* intimate parts of a person[.]" (Emphasis added.) "Although it is true that under proper circumstances 'or' may mean 'and', the common usage of the word 'or' is as a disjunctive, indicating an alternative. It usually connects words or phrases of different meanings permitting a choice of either." *State v. Sorenson*, 44 Haw. 601, 604, 359 P.2d 289, 291 (1961) (citations omitted). Based on the plain language of HRS § 707–700, the trial court correctly concluded that the language "sexual or other intimate parts" identifies two categories: (1) the broader category of "other intimate parts," and (2) the more specific category of "sexual parts."

■ Neither "sexual parts" nor "intimate parts" are expressly defined. Thus, the analysis begins with the words' "most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." HRS § 1–14 (1993). This court "may confirm the ordinary meaning of statutory terms by resort to extrinsic aids, such as dictionaries and our case law." *Williamson v. Hawai'i Paroling Auth.*, 97 Hawai'i 183, 197, 35 P.3d 210, 224 (2001) (citing *State v. Chen*, 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994) (internal quotation marks omitted)).

"Sexual" is defined as "1. of or pertaining to sex. 2. occurring between or involving the sexes: *sexual relations*. 3. having sexual organs, or reproducing by processes involving both sexes." Random House Webster's College Dictionary 1206 (2d rev. & updated Random House ed.2000). Based on the plain language of HRS § 707–700, "sexual parts" clearly refers to the sex organs. Inasmuch as the mouth and tongue are not sex organs, this court must determine whether the

mouth and tongue fall within the scope of "intimate parts" under HRS § 707–700.

■ "Intimate" is defined as:

*adj.* 1. associated in close personal relations: *an intimate friend.* 2. characterized by or involving warm friendship or a familiar association or feeling: *an intimate greeting.* 3. private; closely personal: *one's intimate affairs.* 4. characterized by or suggesting privacy or intimacy; cozy: *an intimate café.* 5. (of an association, knowledge, understanding, etc.) arising from close personal connection or familiar experience. 6. engaging in or characterized by sexual relations. 7. (of apparel) worn next to the skin. 8. showing a close union or combination of particles or elements: *an intimate mixture.* 9. inmost; personal: *intimate secrets.* 10. of, pertaining to, or characteristic of the inmost or essential nature: *the intimate structure of an organism. —n.* 11. an intimate friend or associate.

Random House Webster's College Dictionary 694. Kalani's assertion on appeal that, in the context of HRS § 707–700, "engaging in or characterized by sexual relations" appears to be the most applicable definition. Thus, the plain language of the term "intimate parts" refers to those parts of the body typically associated with sexual relations. Additionally, under the "maxim of ejusdem generis[,][w]here general words follow specific words in a statute, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Peterson v. Hawai'i Elec. Light Co.*, 85 Hawai'i 322, 328, 944 P.2d 1265, 1271 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (citing *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 74, 868 P.2d 1193, 1201 *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994)). Under this maxim of statutory interpretation, this court is bound to interpret "intimate parts" to include only parts of the body similar in nature to "sexual parts." Both the plain language of the statute and application of the maxim of ejusdem

generis indicate that "intimate parts," as used in HRS § 707–700, refers to only those parts of the body typically associated with sexual relations.

 Although the terms used in the definition of "sexual contact" are clear, the plain language of HRS § 707–700 does not indicate whether the legislature considered the mouth and tongue as parts of the body typically associated with sexual relations. Therefore, this court must look beyond the plain language of the statute.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Kaua,* 102 Hawai'i at 8, 72 P.3d at 480 (some citations omitted).

B. *The Legislative History of HRS § 707–700*

As originally enacted, HRS § 707–700 (Special Pamphlet 1975) provided that " '[s]exual contact' means any touching of the sexual or other intimate parts of a person not married to the actor, done with the intent of gratifying the sexual desire of either party[.]" *See also* 1972 Haw. Sess. L. Act 9, § 1 at 85. In December 1984, the Committee on Penal Code Revision and Reform of the Judicial Council of the Hawai'i Supreme Court [hereinafter, Committee on Penal Code Revision] recommended, *inter alia,* that HRS § 707–700 be amended to limit the definition of "sexual contact" to offensive contact with specifically enumerated parts of the body. The Committee on Penal Code Revision proposed amending HRS § 707–700 to read, " '[s]exual contact' means any offensive touching of the penis, testicles, mons veneris, groin, inner thigh, buttock, or female breast of another person's body." *See* Comm. on Penal Code Revision & Reform of the Judicial Council of the Hawai'i Supreme Court, A Comprehensive Review & Reformation of the Hawai'i Penal Code (Submitted to the Thirteenth Legislature) 100 (1984).

The Committee on Penal Code Revision's proposed amendment to HRS § 707–700 was submitted to and considered by the legislature. *See* H.B. 100, 13th Leg., Reg. Sess. (Haw.1986); *see also* Sen. Stand. Comm. Rep. No. 569–86, in 1986 Senate Journal at 1037 (indicating that the senate committee considered, *inter alia,* amending "Section 707–700, Hawai'i Revised Statutes, by incorporating the [C]ommittee on [P]enal [C]ode [R]evision's definition of sexual contact"). Ultimately, however, the legislature rejected the proposed amendment. Instead, the legislature expanded the definition of "sexual contact" by removing the requirement that the proscribed conduct be done "with the intent of gratifying the sexual desire of either party." *See* 1986 Haw. Sess. L. Act 314 § 48 at 615.[3]

On appeal, Kalani urges this court to interpret "sexual contact" to require touching of the genitals, the pubic area, the buttocks, and the female breasts. However, the history of HRS § 707–700 clearly indicates that the

---

3. As amended in 1986, HRS § 707–700 provided that " '[s]exual contact' means any touching of the sexual or other intimate parts of a person not married to the actor." *See* 1986 Haw. Sess. L. Act 314 § 48 at 615.

legislature refused to adopt the narrow interpretation of "sexual contact" advanced by Kalani in the instant appeal.[4]

## C. Construing the Definition of "Sexual Contact" with Reference to Other Statutes Concerning Sexual Conduct

Kalani contends that an in pari materia reading of the definition of "sexual contact" under HRS § 707–700 and the definition of "sexual conduct" under HRS § 712–1210 indicates that inserting one's tongue into the mouth of another while in the act of kissing does not constitute "sexual contact." As noted *supra*, statutes concerning the same subject matter are construed with reference with one another. *See* HRS § 1–16. This court has noted that the definitions of "sexual contact" under HRS § 707–700 and "sexual conduct" under HRS § 712–1210 were both "adopted expressly for use in penal statutes regulating conduct with sexual connotations" and construed the two statutes with reference to one another. *Rodgers,* 68 Haw. at 442, 718 P.2d at 277.

Kalani focuses on one of the two definitions of "sexual conduct" under HRS § 712–1210 (Supp.2002), which provides that " '[s]exual conduct' means acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast or breasts of a female for the purposes of sexual stimulation, grati-

fication, or perversion." Kalani reasons that, because the above-quoted definition of "sexual conduct" does not include physical contact with the mouth and tongue, the legislature did not consider the mouth and tongue as parts of the body typically associated with sexual relations. Kalani's argument fails to consider HRS § 712–1210 as a whole.

In addition to the language quoted by Kalani, HRS § 712–1210 also states that " '[s]exual conduct' has the same meaning as in section 712–1200(2)." HRS § 712–1200(2) (1993) provides that, " 'sexual conduct' means 'sexual penetration,' 'deviate sexual intercourse,' or 'sexual contact,' as those terms are defined in section 707–700." Thus, the definition of "sexual conduct" under HRS § 712–1210 includes "deviate sexual intercourse," "sexual contact," "sexual penetration" as defined in HRS § 707–700.

HRS § 707–700 provides that " '[d]eviate sexual intercourse' means any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the *mouth,* anus, or sex organs of another." (Emphasis added.) HRS § 707–700 also provides in pertinent part that " '[s]exual penetration' means vaginal intercourse, anal intercourse, *fellatio,*[5] *cunnilingus,*[6] *anilingus,* deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required."[7] (Emphasis added.) HRS

---

4. In 1987, the legislature, prompted by this court's decision in *State v. Rodgers,* 68 Haw. 438, 718 P.2d 275, *reconsideration denied,* 68 Haw. 438, 718 P.2d 275 (1986), further broadened the definition of "sexual contact" to include touching "of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts." *See* 1987 Haw. Sess. L. Act 181 § 7 at 410; Hse. Stand. Comm. Rep. No. 486, in 1987 House Journal at 1329; *see also* Sen. Stand Comm. Rep. No. 1130, in 1987 Senate Journal at 1393 (stating that HRS § 707–700 "was amended by broadening the definition of the term sexual contact to include the touching of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts").

5. "Fellatio" is defined as "oral stimulation of the penis." Random House Webster's College Dictionary 483.

6. This court has noted that the word "cunnilingus" "is derived from the Latin word 'cunnus' meaning the vulva and the Latin verb 'linctus[,]' the act of licking, and thus is defined as the stimulation of the vulva, or clitoris, with the lips or tongue." *State v. Mueller,* 102 Hawai'i 391, 396, 76 P.3d 943, 948 (2003) (citations omitted).

7. Effective May 10, 2004, the definition of "sexual penetration" was amended to mean:

(1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening

§ 707–700 expressly includes the mouth in the definitions of "deviate sexual intercourse" and "sexual penetration." Thus, a reading of the definition of "sexual contact" in the context of HRS § 707–700 as a whole, *see* HRS § 1–15, indicates that the legislature associated the mouth and tongue with sexual relations. Moreover, because the definition of "sexual conduct" under HRS § 712–1210 incorporates the definitions of "deviate sexual intercourse" and "sexual penetration," an in pari materia reading of the definition of "sexual contact" under HRS § 707–700 and "sexual conduct" under HRS § 712–1210 leads to the same conclusion.

■ Based on the plain language and legislative history of HRS § 707–700 and construing the definition of "sexual contact" with reference to other definitions relating to sexual relations in HRS §§ 707–700 and 712–1210, we hold that contact with the interior of the mouth constitutes "touching of . . . intimate parts" under the definition of "sexual contact" in HRS § 707–700. Given that Kalani (1) does not challenge the trial court's findings that the prosecution adduced evidence before the grand jury that Kalani, on two separate occasions put his mouth on the mouth of the complaining witness and during each of those occasions put his tongue in her mouth and (2) conceded at trial that the prosecution adduced sufficient evidence demonstrating that Kalani committed the acts alleged, we also hold that the circuit court did not err in (a) denying Kalani's motion to dismiss and (b) denying his motion for judgment of acquittal, and (c) adjudicating him guilty of and sentencing him for sexual assault in the third degree.

### D. *Remaining Arguments*

#### 1. **Vagueness**

■ Kalani appears to raise a vagueness challenge, arguing that "if [this court] allows the definition of 'sexual and other

intimate parts' to be broadened to include parts of the body not commonly associated with sexual relations, such as the mouth, tongue, hair, neck, shoulders, back and waist, the definition of 'sexual contact' will no longer be crystal clear." Initially,

> [a] criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, *no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.*

*State v. Marley*, 54 Haw. 450, 460, 509 P.2d 1095, 1103 (1973) (emphasis added).

> [A] criminal statute is void for vagueness unless it: 1) gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly, and 2) provides explicit standards for those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.

*State v. Richie*, 88 Hawai'i 19, 31, 960 P.2d 1227, 1239 (1998) (quoting *State v. Bates*, 84 Hawai'i 211, 220–21, 933 P.2d 48, 57–58 (1997)). Additionally, "[i]n determining the sufficiency of the notice[,] a statute must, of necessity, be examined in the light of the conduct with which a defendant is charged. . . . The test the court is concerned

of another persons's body; it occurs upon any penetration, however slight, but emission is not required; or

(2) Cunnilingus or anilingus, whether or not actual penetration occurred.

with here is whether the statute conveys an adequate warning as applied in a specific situation." *Bates*, 84 Hawai'i at 221, 933 P.2d at 58 (citations, brackets, and internal quotation marks omitted). This court has previously held that:

> the definition of "sexual contact" in HRS § 707–700 is crystal clear. The statute establishes a bright-line rule, which in laypersons' terms can be summarized as: "You can look but you can't touch." This definition gives the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. It also constitutes an explicit standard that avoids arbitrary and discriminatory enforcement and is not subjective. Thus, the statute is not unconstitutionally vague.

*Richie*, 88 Hawai'i at 31–32, 960 P.2d at 1239–40.

In the instant case, Kalani appears to argue that a person of ordinary intelligence would not reasonably know that the interior of the mouth is part of the body typically associated with sexual relations. This court has recognized that terms referring to sexual conduct, including "blow job," are "recognized by a large segment of the adult population in Hawai'i as expressions describing sexual conduct in slang." *State v. Lunceford*, 66 Haw. 493, 496, 666 P.2d 588, 591 (1983). This court stated:

> Some lexicographers have gone so far as to say that "blow," "[a]lthough taboo ... is the most common word for oral intercourse and is in wide use." Dictionary of American Slang [45 (2d supp. ed.1975) ] (emphasis in original). And "blow job" has even found its way into a respected dictionary of the English Language. *See* The American Heritage Dictionary of the English Language 144, 483 (1971) (blowjob, fellatio). Thus, an acceptance of defendant's thesis that the [phrases "blow job" and "make love"] ascribed to her were devoid of evidentiary value would only betray ignorance on our part of the society we live in and its realities.

*Id.* at 497, 666 P.2d at 591 (emphasis omitted). Clearly, that a large segment of the adult population of the state recognizes slang terms for fellatio indicates that a large segment of Hawaii's adult population associates the interior of the mouth with sexual relations. Therefore, Kalani fails to establish that a person of ordinary intelligence would not know that Kalani's conduct in the instant case constituted sexual contact. Accordingly, with respect to the conduct in this case, we hold that Kalani fails to demonstrate that HRS § 707–700 is unconstitutionally vague.

### 2. Rule of Lenity

Kalani appears to argue that his conviction and sentence should be vacated based on the rule of lenity. This court has ruled that, "[w]here a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity. Under the rule of lenity, the statute must be strictly construed against the government and in favor of the accused." *State v. Shimabukuro*, 100 Hawai'i 324, 327, 60 P.3d 274, 277 (2002) (citations omitted).

In the instant case, as noted *supra*, the term "intimate parts," as used in HRS § 707–700 is not ambiguous and both the legislative history and this court's prior opinions demonstrate that the interior of the mouth is a part of the body typically associated with sexual relations. Accordingly, Kalani's argument regarding the rule of lenity lacks merit.

### IV. *CONCLUSION*

For the foregoing reasons, we affirm the July 23, 2004 judgment of conviction and sentence of the Circuit Court of the Second Circuit.