18 P.3d 948

**Mary Lisa SANTOS, Petitioner–Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF THE COURT, State of Hawai'i, Respondent–Appellee.**

No. 23064.

Intermediate Court of Appeals of Hawai'i.

Jan. 31, 2001.

As Amended April 18, 2001.

---

On the briefs: Keith E. Tanaka, for Petitioner–Appellant.

On the briefs: Allan G. Kawada and Girard D. Lau, Deputy Attorneys General, for Respondent–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Petitioner–Appellant Mary Lisa Santos (Santos) appeals the district court's November 22, 1999 Judgment on Appeal affirming the administrative hearing officer's (Hearing Officer's) October 4, 1999 Notice of Administrative Hearing Decision revoking Santos' driver's license for one year from October 9, 1999, through October 8, 2000, and denying her a conditional permit. We reverse.

## RELEVANT STATUTES

Hawai'i Revised Statutes (HRS) § 286–255(a) (Supp.1999) states, in relevant part, as follows:

Whenever a person is arrested for a violation of section 291–4 [driving under the influence of intoxicating liquor] or 291–4.4 [habitually driving under the influence of intoxicating liquor or drugs], ..., [t]he arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer also shall inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test.

HRS § 286–264(a) (Supp.1999) states, in relevant part, as follows:

If an arrestee subject to administrative revocation under this part submitted to a breath or blood test and has had no prior alcohol enforcement contacts during the five years preceding the date of arrest, the director, at the request of the arrestee at the administrative hearing, may issue a conditional permit allowing the arrestee to drive after a minimum period of absolute license revocation of thirty days if one or more of the following conditions are met:

(1) The arrestee is gainfully employed in a position that requires driving and will be discharged if the arrestee's driving privileges are administratively revoked; or

(2) The arrestee has no access to alternative transportation and therefore must drive to work or to a substance abuse treatment facility or counselor for treatment ordered by the director under section 286–261.

HRS § 286–259 (Supp.1999) states, in relevant part, as follows:

**Administrative Hearing.** (a) If the director administratively revokes the arrestee's license after administrative review,

the arrestee may request an administrative hearing to review the decision. . . .

. . . .

(c) The arrestee may be represented by counsel.

(d) The director shall conduct the hearing and have authority to:

. . . .

(2) Examine witnesses and take testimony;

(3) Receive and determine the relevance of evidence;

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;

. . . .

(6) Make a final ruling.

(e) The director shall affirm the administrative revocation only if the director determines that:

. . . .

(3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .08 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

(f) The arrestee's prior alcohol enforcement contacts shall be entered into evidence.

(g) The sworn statements provided in section 286–257 shall be admitted into evidence. Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing. If the official cannot appear, the official may at the discretion of the director testify by telephone.

HRS § 286–251 (Supp.1999) defines "[a]lcohol enforcement contact" as follows:

"Alcohol enforcement contact" means any administrative revocation ordered pursuant to this part; any driver's license suspension or revocation imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

HRS § 286–260 (Supp.1999) states, in relevant part, as follows:

**Judicial review; procedure.** (a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. . . .

(b) The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing without taking of additional testimony or evidence. . . .

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(d) The court shall not remand the matter back to the director for further proceedings consistent with its order.

### RELEVANT PRECEDENT

In *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999), the Hawai'i Supreme Court affirmed the district court's order granting the defendant's motion to suppress the blood test results in his criminal DUI (driving under the influence of intoxicating liquor) prosecution. The defendant had consented to a blood test after he was misinformed by the arresting officer

[t]hat if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceeding [sic] the date of arrest, your driving privileges will be revoked for one year *instead of the three month revocation*

*that would apply if you chose to take the test and failed it* [.]

*Id.* at 47, 987 P.2d at 270 (emphasis in original). The misinformation was that "your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take the test and failed it[.]" In truth, the relevant time period for choosing to take the test and failing it was revocation anywhere from three months to one year. The Hawai'i Supreme Court decided that because the arresting officer relevantly and materially misinformed the defendant of the administrative penalties applicable upon choosing to take the blood test and failing it, the defendant did not knowingly and intelligently consent to a blood test. According to the Hawai'i Supreme Court,

> [t]he statutory scheme, however, also protects the rights of the driver in that he or she may withdraw his or her consent before a test is administered. To this end, Hawaii's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test.
>
> . . . .
>
> . . . Not only was the information given to Wilson misleading, it was relevant to his decision whether to agree to or refuse the blood alcohol test. Thus, although Wilson elected to take the test, he did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal.

*Id.* at 49–51, 987 P.2d at 272–74 (footnote and citations omitted; emphasis in original).

## BACKGROUND

After being convicted of DUI on March 21, 1995, Santos' driver's license was suspended for 90 days.

The AD–DUI Form 2 (3/92) (DUI Form 2) dated September 8, 1999, states, in relevant part, as follows:

a. That you may take either a blood test or a breath test or both;

b. That if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest, your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it, (2) if your driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest, your driving privileges will be revoked for two years instead of the one year revocation that would apply if you chose to take a test and failed it, (3) if your driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest, your driving privileges will be revoked for four years instead of the two year revocation that would apply if you chose to take a test and failed it, (4) if your driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest, your driving privileges will be revoked for life regardless of whether you take a test or not, (5) if you are under the age of eighteen years, your revocation will be for the period remaining until your eighteenth birthday or for the appropriate revocation period listed above, whichever is longer;

c. That criminal charges under Sec. 291–4 HRS, may be filed;

d. That if your driving privilege is revoked, notice of the results of the hearing will be sent to the examiner of drivers of each county, and that the examiner shall deny you a license or permit to operate a motor vehicle for the period of the above revocation;

e. That you shall be referred to a substance abuse counselor for an assessment of your dependence and the need for treatment at your own expense; and

f. That you shall be required to obtain treatment at your own expense if deemed appropriate.

g. You are not entitled to an attorney before you submit to a breath or blood test.

h. That you shall not qualify to request a conditional permit if you refuse to take a breath or blood test.

Santos was arrested for DUI. The arresting officer's report states, in relevant part, as follows:

At the Wailuku Police station, I gave SANTOS a copy of AD–DUI Form 2. I requested she read the form silently as I read the form out loud. After I read AD–DUI Form 2 out loud to SANTOS, I verbally explained the form, including what a conditional permit is and that she would not be able to request for a conditional permit if she elected to refuse to take any type of chemical test(s). **I informed SANTOS the director of A.D.L.R. may grant a conditional permit allowing her to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s).** SANTOS informed me she understood the AD–DUI Form 2, what a conditional permit is and the provisions to obtain a conditional permit.

(Emphasis added.)

The Intoxilyzer test given to Santos showed that her breath alcohol content was 0.169.

On September 15, 1999, Santos requested an administrative hearing.

On September 27, 1999, at the hearing before the Hearing Officer, Santos was the only witness who testified, and she testified, in relevant part, as follows:

Q. And on the way to the police station, did you—was there any discussion as far as what would happen once you got there?

A. Yeah.

Q. What was discussed?

A. Well, the whole issue of breathalyzer, he said it would better my chances, and then talking about my prior and getting conditional license, and if it fell within the five year period.

Q. Did you inform the officer that you had a prior DUI offense?

A. Yes.

Q. Conviction. Okay. Once you got to the station, regarding whether or not you want to take a breath or a beath [sic] test, what was discussed by the officer, what was told to you?

A. He just said it would be beneficial for me if I took the breathalyzer.

Q. Why?

A. Because, to get a license back.

Q. Did he say, essentially that if you took a test, a breathalyzer test, that you could get a conditional permit?

A. Yeah.

Q. And is that why you decided to take the test?

A. Yes.

Q. Because you wanted a conditional permit?

A. Yes.

Q. Did the officer say anything to you, as far as if you have a prior DUI within five years that you could not get a conditional permit, was that ever discussed?

A. He didn't say anything about that.[1]

Q. And why did you feel it important to get a conditional permit, what is the nature of your job?

A. Well, I work in the recreation department, but when it rains, they always pull people from recreational to drive shuttle for employees. So that and getting back and forth to work.

Q. Okay[.] So based upon what the officer told you, that it would be better for you to take a breathalyzer test to get a conditional permit, you went ahead and took the breathalyzer test?

A. Yeah.

Q. And the officer did know that you had a prior DUI?

A. Definitely.

Q. You told him about that?

1. If, as noted previously, Petitioner Appellant Mary Lisa Santos (Santos) and the police officer were "talking about [Santos'] prior and getting conditional license, and if it fell within the five year period[,]" it is difficult to believe that they were not talking about the difference that resulted "if it fell within the five year period."

A. I definitely told him.

(Footnote added.)

On October 4, 1999, the Hearing Officer filed a Notice of Administrative Hearing Decision sustaining the administrative revocation of Santos' driver's license, revoking Santos' license for one year from October 9, 1999, through October 8, 2000, and denying a conditional permit.

On October 4, 1999, the Hearing Officer entered Findings of Fact, Conclusions of Law, and Decision finding/deciding that:

A. Counsel argued that [Santos] has the defense of necessity or choice of evils. [Santos] was the passenger in her boyfriend's vehicle when it was pulled over by the police and the boyfriend arrested for DUI. [Santos] was told by Sgt. R. Hirayama not to drive the boyfriend['s] vehicle home because [Santos] had strong indicia of intoxication, .... The police offered to call a cab for [Santos] and she refused stating that she lived a half mile away.... The police left and [Santos] started to walk the half mile home. [Santos] then decided that it was too dark to walk home and went back to the boyfriend's vehicle and drove toward home. [Santos] was stopped on her way home by Sgt. Hirayama who recognized her as she drove.

### Finding

The defenses of necessity and choice of evils do not apply in this situation....

B. Counsel argued that [Santos] was confused by the arresting officer's reading of the implied consent law....

### Finding

There is nothing in the record (other than [Santos'] testimony) to indicate any confusion.... [Santos] did take a breath test (.169 grams of alcohol per 210 liters of breath) thus halving the period of revocation from two years for a refusal to one year for a test. In any event, a mistake that inures to an arrestee's benefit is not a reason for reversal, ....

[Santos'] testimony on this matter was not credible on this issue.

On October 8, 1999, Santos filed a Petition for Judicial Review and Statement of the Case. In this document, counsel for Santos stated that "[Santos] elected to take a breath test based upon the officer's representations that if [Santos] did so, [Santos] would be eligible for a conditional permit. This was clearly not possible under HRS § 286–254."

On November 8, 1999, the district court held its judicial review hearing.

On November 22, 1999, the district court entered its Decision and Order Affirming Administrative Revocation stating, in relevant part, as follows:

Petitioner raises one issue: that the Petitioner was confused and misinformed by the arresting officer's reading of the implied consent law.

Based on the record, the Court finds no error. The [Hearing Officer] noted that other than [Santos'] testimony, there is nothing indicating any confusion at all. The Hearing Officer also found [Santos'] testimony to not be credible on this point. Since [Santos'] argument involves a question of credibility, this will not be disturbed absent clear abuse which this court finds does not exist.

### QUESTION

Santos states the question as follows: "Under the holding of *State v. Wilson,* [92 Hawai'i 45, 987 P.2d 268 (1999),] was the court's affirmation of the administrative revocation clearly erroneous?"

Respondent–Appellee Administrative Director of the Court, State of Hawai'i (State) states the question as follows:

Where the written form does not erroneously advise a driver regarding eligibility for a conditional permit, and the arresting officer orally states correctly that the driver "*may*" receive a conditional permit (if driver takes a breath or blood test), must driver's license revocation be reversed simply because it later comes to light that

driver had prior arrests making the driver ineligible for a conditional permit? [2]

(Footnote added; emphasis in original.)

We conclude that the general question is whether the Hearing Officer reversibly erred when he denied Santos' motion to suppress the breath test results.

## DISCUSSION

### 1.

The State contends that the police did not misinform Santos. We disagree. The police read DUI Form 2 to Santos. The only statement that DUI Form 2 made about a conditional permit is as follows: "That you shall not qualify to request a conditional permit if you refuse to take a breath or blood test." DUI Form 2 said nothing about Santos' eligibility for a conditional permit if she agreed to take a breath or blood test. The arresting officer was not required to tell Santos anything else about a conditional permit. Nevertheless, the arresting officer "informed SANTOS the director of A.D.L.R. [Administrative Driver's License Revocation] may grant a conditional permit allowing her to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s)." The arresting officer did not inform Santos that if or because Santos had a prior alcohol enforcement contact within the five years preceding the date of arrest the director of A.D.L.R. *cannot* grant a conditional permit allowing SANTOS to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s). Thus, the arresting officer misinformed Santos.

■ We conclude, pursuant to HRS § 286-255(a), that the arresting officer: (1) is not required to inform the arrested person about the "five years" exception when he/she limits his/her information to the arrested person to what is written in part 4.h. of DUI Form 2; and (2) is required to inform the arrested person about the "five years" exception when he/she additionally informs the arrested person, as did the arresting officer

in Santos' case, that "the director of A.D.L.R. may grant a conditional permit allowing [the arrestee] to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s)."

### 2.

The Hearing Officer did not find any credible support in the record for the allegation by counsel for Santos that "the basis for [Santos'] taking the [Intoxilyzer] was based upon misinformation given to her by [the arresting officer.]" The Hearing Officer's decision is based on his finding that Santos was not confused. The district court affirmed on that basis. As best as we can decipher it, the Hearing Officer's logic is as follows: Santos testified that she decided to take the Intoxilyzer test in reliance on the officer's statement that Santos would be eligible for a conditional permit; Santos' testimony is not credible; therefore, Santos failed to prove reliance and the incompleteness of the information was harmless.

The question is whether (a) the State had the burden to prove Santos' reliance on and prejudice from the misinformation or (b) Santos' nonreliance or lack of prejudice from the misinformation given to her by the police was an affirmative defense or (c) Santos' reliance on and prejudice from the misinformation was conclusively presumed.

In *Wilson, supra,* the dissenting opinion noted that "[the defendant] has *never* asserted that he would have refused the test had he received a full explanation of the penalties under *Gray[ v. Administrative Director of the Court,* 84 Hawai'i 138, 931 P.2d 580 (1997) ]." *Wilson,* 92 Hawai'i at 60, 987 P.2d at 283 (emphasis in original). The majority opinion was silent on the question of the defendant's reliance on and prejudice from the relevant and material insufficient information/misinformation and concluded that the misinformation and/or insufficient information resulted in the absence of a knowing and intelligent consent.

**2.** It having "later [come] to light that [the] driver had prior arrests making the driver ineligible for a conditional permit[,]" can it honestly be said

that "the written form does not erroneously advise a driver regarding eligibility for a conditional permit[?]"

■ In light of *Wilson*, we conclude that in this context the question of the arrestee's reliance is objective, not subjective. Based on the relevant statutes and *Wilson*, we conclude that the arrestee's reliance on misinformation and/or insufficient information from the arresting officer is conclusively presumed when the following conditions are satisfied:

1. Misinformation was given and/or a statute required the information to be given and the information was not given.

2. The misinformation and/or insufficient information was relevant and material to the arrestee's decision.

3. The arrestee has not admitted that he or she did not rely on the misinformation and/or insufficient information.

4. If given, the correct and/or sufficient information reasonably may have influenced a reasonable person to decide opposite of how the arrestee decided.

■ In this case, all four conditions have been satisfied. Therefore, it must be conclusively presumed that Santos did not knowingly and intelligently consent to the breath test and concluded that the evidence of the results of the breath test administered to Santos should have been suppressed.

3.

The Hearing Officer decided that by taking a test, Santos reduced the period of revocation from two years to one and thereby was not harmed by the misinformation. This decision assumes that the arrested driver is more interested in reducing the period of revocation than in obtaining a conditional permit during the period of revocation. We conclude that a reasonable person is as much interested in a conditional permit during the period of revocation as he/she is concerned with the length of the revocation. Therefore, the misinformation was material and harmful.

## CONCLUSION

Accordingly, we reverse (1) the district court's November 22, 1999 Judgment on Appeal affirming the administrative hearing officer's October 4, 1999 Notice of Administrative Hearing Decision; and (2) the hearing officer's October 4, 1999 Notice of Administrative Hearing Decision.