163 P.3d 199

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Thomas W. MARSHALL, Defendant–Appellant.**

**No. 27694.**

Intermediate Court of Appeals of Hawai'i.

June 22, 2007.

Timothy I. MacMaster, on the briefs, Honolulu, for Defendant–Appellant.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

RECKTENWALD, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Thomas W. Marshall (Marshall) appeals from the Judgment entered on November 30, 2005 in the District Court of the First Circuit, Honolulu Division [1] (district court). The district court convicted Marshall of one count of Operating a Vehicle Under the Influence of an Intoxicant

---

1. The Honorable James Dannenberg presided.

(OVUII), pursuant to Hawaii Revised Statutes (HRS) § 291E–61(a)(1) and (a)(3) (Supp. 2005).[2]

On appeal, Marshall argues that the district court erred when it

(1) "admitted the sworn statements of the intoxilyzer supervisor into evidence";

(2) "admitted evidence of the result of the breath alcohol concentration test into the evidentiary record";

(3) "concluded that [Marshall] violated HRS § 291E–61(a)(3)";

(4) "convicted and sentenced" Marshall; and

(5) "determined that [Marshall] had been accurately and sufficiently informed of the 'sanctions under [HRS] section 291E–41.' "

We affirm the Judgment.

## I.

On August 6, 2005, Honolulu Police Department (HPD) Officer Chung arrested Marshall for OVUII. On November 18, 2005, Marshall appeared in the district court for trial and entered a plea of not guilty.

On direct examination at trial, HPD Sergeant Conjugacion testified that on August 6, 2005, he observed Marshall make an unsafe lane change on Kuhio Avenue in Waikiki. Sergeant Conjugacion stopped Marshall's vehicle, walked up to the driver's side window of the vehicle, told Marshall why he had stopped Marshall, and asked Marshall for his driver's license, registration, and proof of insurance. Sergeant Conjugacion testified that he "detected a strong scent of alcoholic beverage coming from [Marshall's] breath as he spoke," and he noted that Marshall's eyes "were watery and glassy." Sergeant Conjugacion asked Marshall to participate in a field sobriety test (FST), and Marshall agreed. On cross-examination, Sergeant Conjugacion conceded that Marshall did not appear flushed or exhibit slurred speech; Sergeant Conjugacion also did not recall Marshall being unsteady on his feet or disoriented.

Officer Chung testified that when he responded to the scene of the incident, he detected an odor of alcohol coming from Marshall. Officer Chung testified as to his FST training, which consisted of training in the horizontal gaze nystagmus, the walk and turn, and the one-leg stand tests. Officer Chung stated that after he administered the FST to Marshall, he concluded that Marshall was under the influence of alcohol at the time of the incident. Officer Chung then placed Marshall under arrest.

After a lunch break and prior to the continuation of Officer Chung's testimony, Marshall moved to exclude all evidence obtained as a result of the arrest on the basis that there was no probable cause for the arrest. The district court found that Marshall's arrest was supported by probable cause and denied Marshall's motion. Officer Chung then testified as to the procedures used in obtaining Marshall's signature on the implied consent forms and noted that Marshall consented in writing to the breath test and refused the blood test.

Officer Kaaa (the Operator) testified that she administered a breath-alcohol test to Marshall on August 6, 2005. She described her training and the procedures employed in operating the Intoxilyzer Model 5000 (Intoxilyzer) used to administer the test to Marshall. The Operator testified that on August 6, 2005, she completed and signed the Sworn Statement of Intoxilyzer 5000 Operator, which set forth the result of Marshall's test; however, she did not testify as to the result of that test. Based on her training and experience in operating the Intoxilyzer, the Intoxilyzer appeared to be operating properly and accurately on August 6, 2005.

---

2. Hawaii Revised Statutes (HRS) § 291E–61(a)(1) and (a)(3) (Supp.2005) provides:

§ 291E–61 **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

. . . .

(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

Following the Operator's testimony, the State sought to admit two sworn statements of HPD Intoxilyzer Supervisor Dawson (Supervisor) that the Intoxilyzer used to test Marshall had been properly calibrated and tested for accuracy on October 4 and October 24, 2005. The State offered the statements pursuant to Hawaii Rules of Evidence (HRE) Rule 803(b)(8),[3] the public records exception to the hearsay rule. Marshall objected, based on the Confrontation Clause of the United States Constitution. The district court admitted the Supervisor's sworn statements into evidence as State's Exhibit 4 (Exhibit 4). The district court also admitted as State's Exhibit 3 the Operator's sworn statement (Exhibit 3), but stated that it would consider only Marshall's Intoxilyzer test results and not the statement itself. The district court noted that "there is a reading of .100 grams of alcohol per 210 liters of breath and the test was properly administered." The district court then ordered entry of judgment for the State on the unsafe lane change charge and convicted Marshall of the OVUII charge. The district court ordered Marshall to undergo an alcohol assessment and the minimum 14–hour counseling program, suspended his license for 90 days, and imposed fines and fees totaling $619. The district court entered its Judgment on the OVUII charge on November 30, 2005, and Marshall timely filed his notice of appeal on December 19, 2005.

## II.

### A. Evidentiary Rulings

■ "We apply two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule ad-

mits of only one correct result, in which case review is under the right/wrong standard." *State v. Ortiz*, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citations omitted).

### B. Sufficiency of Evidence

■ The standard of review on appeal for sufficiency of the evidence is substantial evidence.

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)[.]

---

3. Hawaii Rules of Evidence (HRE) Rule 803(b)(8) provides:

> **Rule 803 Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
> (b) Other Exceptions.
> . . . .
> (8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or

agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (internal quotation marks and brackets omitted).

### C. Constitutional Questions

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case, and thus, questions of constitutional law are reviewed on appeal under the right/wrong standard." *State v. Rivera,* 106 Hawai'i 146, 155, 102 P.3d 1044, 1053 (2004), *cert. denied,* 546 U.S. 829, 126 S.Ct. 45, 163 L.Ed.2d 78 (2005) (internal quotation marks and citation omitted) (quoting *State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003)).

### III.

### A. Statements of the Intoxilyzer Supervisor

■ Marshall contends the district court erred by admitting the sworn statements made by the Intoxilyzer Supervisor (Exhibit 4) into evidence without calling the Supervisor to testify at trial or showing that she was unavailable.[4] Marshall argues that this amounted to a violation of his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and under the Hawai'i Constitution. The State responds that the statements made by the Supervisor were properly admitted pursuant to HRE Rule 803(b)(8) as public records and the statements admitted into evidence do not violate Marshall's rights to confront adverse witnesses.

Marshall argues that the Supervisor's statements should not have been admitted because the statements denied him the opportunity to confront and question an adverse witness, and he cites *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), in support of his argument. In *Crawford,* the United States Supreme Court distinguished between testimonial and non-testimonial hearsay, ruling that states should have flexibility in determining whether the latter may be exempted from Confrontation Clause scrutiny, but concluding that the former cannot be admitted in the absence of unavailability and prior opportunity for cross-examination. 541 U.S. at 68, 124 S.Ct. at 1374. However, the Supreme Court left the definition of testimonial hearsay "for another day." *Id.*

In admitting Exhibit 4, the district court recognized that the threshold question was whether or not Exhibit 4 was "testimonial" in nature. The district court stated that "[t]estimonial is a term of art that every court in this country is struggling with now thanks to *Crawford.*"

*State v. Grace,* 107 Hawai'i 133, 111 P.3d 28 (App.2005), addressed the changes brought about by *Crawford.* Relying on *Grace,* Marshall argues that "if the sworn statements of the intoxilyzer supervisor are 'testimonial,' it was reversible error to admit them into the evidentiary record."

Grace appealed his conviction for abuse of a family or household member. *Grace,* 107 Hawai'i at 134, 111 P.3d at 29. Although Grace's wife initially told the police that Grace had hit her, she claimed at trial he had not done so. *Id.* at 135, 111 P.3d at 30. Over Grace's objection, the trial court permitted a police officer to testify that two girls told the officer they witnessed Grace hitting his wife. *Id.* at 136, 111 P.3d at 31. Grace appealed, arguing that the trial court had erred in admitting the girls' statements because the statements were testimonial in nature and the girls were neither unavailable nor subjected to cross-examination. *Id.* at 142, 111 P.3d at 37. On appeal, this court decided "the girls' statements were 'testimonial' under *Crawford,* as they were 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* at 143, 111 P.3d at 38 (quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364).

---

**4.** Hawai'i Administrative Rules (HAR) § 11–114–6(b)(7) requires that the evidentiary record contain evidence that the Intoxilyzer equipment was tested for accuracy: "Each breath alcohol test shall have been preceded by an accuracy test which meets the criteria of section 11–114–7, by not more than thirty-one days." HAR § 11–114–7 requires, *inter alia,* that every accuracy test shall be conducted by a supervisor.

Here, the circumstances in which the Supervisor's statements were made are starkly different from the circumstances in which the girls made their statements to the police officer in *Grace*. The girls' out-of-court statements admitted in *Grace* were made to a law enforcement officer investigating a crime and specifically directed to Grace. In *Davis v. Washington*, — U.S. —, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court stated:

> When we said in *Crawford*, [541 U.S. at 53,] 124 S.Ct. [at 1365], that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial.

*Id.* at —, 126 S.Ct. at 2276.

In contrast, the Supervisor's sworn statements were not specific as to Marshall. The Supervisor's statements were "not designed *primarily* to 'establish or prove' some past fact," *Id.* at —, 126 S.Ct. at 2276 (brackets omitted; emphasis added), but "to ensure that appropriate and uniform forensic alcohol testing is performed throughout the State of Hawai'i so that legal criteria are met and reliable and accurate results are assured." Hawai'i Administrative Rules (HAR) § 11–114–1(a). Rather than being a "testimonial" statement, Exhibit 4 was merely "a record of routine, nonadversarial matters made in a nonadversarial setting." *State v. Ofa*, 9 Haw. App. 130, 136, 828 P.2d 813, 817 (1992).

In the instant case, the district court stated: "I would agree with [defense counsel that admission of Exhibit 4 would violate the Confrontation Clause] if indeed I believe[d]

[it] was testimonial or were testimonial except that *Crawford*[5] by its own terms indicates that evidence, lots of evidence isn't including business records, and this is nothing other than the public twin of the business record exception." [6] (Footnotes not in original quote.)

While Hawai'i appellate courts have not ruled on the admissibility of sworn statements made by Intoxilyzer supervisors since the Supreme Court's decision in *Crawford*, the majority of state courts considering the issue have decided that *Crawford* does not bar the use of documentary evidence to establish the foundation for breath test results: *Green v. DeMarco*, 11 Misc.3d 451, 812 N.Y.S.2d 772, 785 (N.Y.Sup.Ct.2005) (admission of documentary evidence to establish foundation for admissibility of breath test results does not implicate core concerns of Confrontation Clause as interpreted by *Crawford*); *State v. Carter*, 326 Mont. 427, 114 P.3d 1001, 1007 (2005) (defendant's confrontation right was not implicated by use of certification reports to demonstrate that Intoxilyzer 5000 was working properly, even though authors of the reports were not present to testify and be confronted); *State v. Norman*, 203 Or.App. 1, 125 P.3d 15, 16–17 & 20 (2005) (admission into evidence of certificates reflecting that Intoxilyzer 5000 had been tested for accuracy, without oral testimony of technicians who prepared them, did not violate defendant's Sixth Amendment confrontation right); *Luginbyhl v. Commonwealth*, 46 Va.App. 460, 618 S.E.2d 347, 355 (2005) (statements in breath test certificate relating to machine's good working order and the administering officer's qualifications were not testimonial statements); *Napier v. State*, 820 N.E.2d 144, 145 & 149 (Ind.Ct.App.2005) (admission of breath test instrument certification documents indicating that inspection and tests were performed on machine on a specified date did not violate rule set forth in *Crawford*); *Rackoff v. State*, 275 Ga.App.

---

**5.** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court stated that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Id.* at 56, 124 S.Ct. at 1367.

**6.** *See State v. Ing*, 53 Haw. 466, 468, 497 P.2d 575, 577 (1972) (police department speed-test card admissible as a business record under HRS § 622–5).

737, 621 S.E.2d 841, 845 (2005), *aff'd,* 281 Ga. 306, 637 S.E.2d 706 (2006) (inspection certificate of instrument used to conduct defendant's breath test was not "testimonial" hearsay under *Crawford* ); *State v. Godshalk,* 381 N.J.Super. 326, 885 A.2d 969, 972–73 (Law Div.2005) (breath testing instrument inspection certificates not within the "testimonial evidence" category of *Crawford* because they are business records and official records of state police); *Bohsancurt v. Eisenberg,* 212 Ariz. 182, 129 P.3d 471, 472 & 480 (Ct.App. 2006) (quality assurance records of Intoxilyzer 5000 used to test defendant's breath sample qualify as business records and are not testimonial under *Crawford* ); *but see Shiver v. State,* 900 So.2d 615 (Fla.Dist.Ct.App. 2005). While not controlling, the cases do amount to persuasive legal authority that the Supervisor's statements were not "testimonial" hearsay.

As the Supervisor's sworn statements cannot be considered "testimonial" hearsay, the statements were not subject to the requirements of the Confrontation Clause of the Sixth Amendment. *Davis,* —— U.S. at ——, 126 S.Ct. at 2276. Therefore, no showing of the Supervisor's unavailability nor a prior opportunity for cross-examination was required prior to admission of Exhibit 4.

### B. Evidence of Breath Alcohol Concentration

Marshall argues that the district court erred by admitting the Intoxilyzer Operator's sworn statement (Exhibit 3), which set forth the results of the test administered to Marshall and evinced that Marshall was legally intoxicated due to a breath alcohol concentration (BAC) of .10. Marshall argues that if the results of the Supervisor's statements (Exhibit 4) were excluded, then insufficient foundation would exist to support the admission of Exhibit 3, and without Exhibit 3, insufficient evidence would exist to support Marshall's conviction pursuant to HRS § 291E–61(a)(1) and (a)(3). As we have already decided that the district court did not err by admitting Exhibit 4, this argument

7. HRS § 291E–41(f) (Supp.2005) (emphasis added) provides:

lacks merit. The district court did not err in admitting Exhibit 3, as Exhibit 4 provided adequate foundation for such admissibility.

### C. Sufficiency of the Evidence

■ Marshall contends the district court erred by concluding that he violated HRS § 291E–61(a)(3)—specifically, when the court found that it was "satisfied that [Marshall] has violated the (a)(3) provision and there is proof beyond a reasonable doubt of that." Additionally, Marshall argues the district court erred when it convicted and sentenced him. These points of error challenging the sufficiency of the evidence lack merit.

As a preliminary matter, Marshall devotes no argument to these points of error. Points not argued may be deemed waived. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7). Nevertheless, Marshall's conviction under HRS § 291E–61(a)(3) rests upon sufficient evidence. Section 291E–61(a)(3) provides that "[a] person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle . . . [w]ith .08 or more grams of alcohol per two hundred ten liters of breath[.]" The statements of the Intoxilyzer Operator and Supervisor admitted as Exhibits 3 and 4 demonstrate that Marshall's BAC concentration was .100, thus exceeding the limit set forth in the statute and constituting sufficient evidence to find that he committed the offense enumerated therein.

### D. Informed Consent Under HRS § 291E–41

■ Marshall argues that he was not accurately and sufficiently informed of the consequences of consenting to or refusing a BAC test and that evidence of the BAC test should not have been admitted because the Implied Consent Form did not adequately inform him of the requirement in HRS § 291E–41(f) (Supp.2005) that he undergo and complete any substance abuse treatment as recommended by a counselor.[7] This argument lacks merit.

**§ 291E–41 Effective date and period of administrative revocation; criteria.**

. . . .

On August 6, 2005, in the presence of Officer Chung, Marshall initialed and signed HPD forms 396B1, 396B2, 396B3, and 396B4, collectively titled "Sanctions for Use of Intoxicants While Operating a Vehicle & Implied Consent for Testing" (Implied Consent Form). The Implied Consent Form was introduced into evidence as State's Exhibit 2 (Exhibit 2).

The Implied Consent Form provided in part:

12. Whenever your license and privilege to operate a vehicle is administratively revoked under section 291E–41, you shall be referred to the driver's education program for an assessment by a certified substance abuse counselor. You shall pay all costs for the assessment and treatment.

Officer Chung testified that he read the entire Implied Consent Form to Marshall; he informed Marshall of the consequences of refusing to take either the breath or blood tests; Marshall agreed to take the breath test and refused the blood test; Marshall initialed each paragraph of the form (including paragraph 12 and the breath test choice); and Marshall signed the form.

Marshall cites *State v. Wilson*, 92 Hawai'i 45, 48–49, 987 P.2d 268, 271–72 (1999), in support of his contention that his decision to take the BAC test did not result from informed consent and was therefore invalid. In *Wilson*, the State appealed a district court order suppressing the results of a blood alcohol test performed on Wilson following his OVUII arrest. *Id.* at 48, 987 P.2d at 271. The Hawai'i Supreme Court noted that Hawai'i's implied consent statute in effect at that time, HRS § 286–151(a) (Supp.1998), required that prior to the administration of a sobriety test, the driver must be accurately and fully informed of the sanctions resulting from a refusal to take such test. *Wilson*, 92 Hawai'i at 49, 987 P.2d at 272. The court concluded that the warning given to Wilson

about the length of time his license could be revoked was inaccurate and misleading because the warning did not inform him that his license could be revoked for up to one year and, therefore, Wilson's decision to take the blood test was not the product of informed consent. *Id.* at 51, 987 P.2d at 274. *Wilson* differs from the instant case because the information provided in Exhibit 2 was not inaccurate. The Implied Consent Form disclosed that Marshall would be referred for substance abuse assessment and would be held responsible for the costs of said assessment and treatment. A reasonable person perusing the form would have every reason to believe that treatment itself would be a sine qua non to treatment costs.

Marshall also cites *Santos v. Administrative Director of the Court*, 95 Hawai'i 86, 18 P.3d 948 (App.2001), *overruled on other grounds by State v. Garcia*, 96 Hawai'i 200, 207, 29 P.3d 919, 926 (2001). Santos's driver's license was suspended for 90 days following her OVUII conviction. *Santos*, 95 Hawai'i at 89, 18 P.3d at 951. The arresting officer, deviating from the standard form used for obtaining consent, informed Santos that she might be eligible for a conditional driving permit even if convicted; however, it later came to light that a prior OVUII arrest rendered Santos ineligible for a conditional driving permit. *Id.* at 91–92, 18 P.3d at 953–54. This court concluded that because Santos had been misinformed, she had not knowingly and intelligently consented to the BAC test. *Id.* at 93, 18 P.3d at 955.

Unlike *Santos*, in the instant case there is no suggestion that Officer Chung deviated from the Implied Consent Form or offered any suggestions or information beyond what was contained on that form. Rather, Officer Chung simply read the Implied Consent Form to Marshall and obtained Marshall's consent to the BAC test.

---

(f) Whenever a license and privilege to operate a vehicle is administratively revoked under this part, the respondent shall be referred to the driver's education program for an assessment, by a certified substance abuse counselor, of the respondent's substance abuse or dependence and the need for treatment. **The** **counselor shall submit a report with recommendations to the director. If the counselor's assessment establishes that the extent of the respondent's substance abuse or dependence warrants treatment, the director shall so order. All costs for the assessment and treatment shall be paid by the respondent.**

## IV.

The Judgment entered on November 30, 2005 by the District Court of the First Circuit, Honolulu Division, is affirmed.